[Civ. No. 27358. Second Dist., Div. Four. Oct. 30, 1963.]

WILLIAM FRYER, JR., as Administrator, etc., Plaintiff and Appellant, v. KAISER FOUNDATION HEALTH PLAN, INC., et al., Defendants and Respondents.

Joseph Henry Wolf and Paul Wyler for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, James W. Baldwin and John G. Flett for Defendants and Respondents.

KINGSLEY, J.—William Fryer (hereinafter William) was the beneficiary of a group contract of medical and hospital insurance issued by defendant Kaiser Foundation Health Plan, Inc. (hereinafter defendant.)[1] The complaint alleges

---

[1]The complaint alleges that each defendant acted as the agent, servant and employee of each other defendant. Defendant Permanente Services, Inc., denied any connection with the matter involved in the law suit. However, that issue was not involved in the motion to dismiss. Since it is apparent that plaintiff's chief claim is against Kaiser we

that: On August 13, 1957, William suffered a heart attack, requiring immediate hospitalization; his wife, Nell, called the telephone numbers announced by defendant as for emergency use but, getting no answer, ultimately called an independent ambulance service, which took William to a hospital not under contract to defendant;[2] William remained in that hospital until November 16, 1957, when his condition permitted his removal to a hospital under contract with defendant; William remained in the latter hospital for a period extending into 1958; and he died on December 17, 1958. The action was originally brought by Nell Fryer, the widow of William, in her own name and on her own behalf. She alleged that defendant had contracted to provide emergency ambulance service, and to pay hospital and nursing bills for a period of 125 days in each calendar year and that it had refused to pay, or to reimburse her for paying, any of such expenses, except that it had provided free hospitalization and nursing for 45 days in 1957.

Prior to trial, Nell died and the present plaintiff was appointed as her administrator and duly substituted as party plaintiff in this action. For convenience, we refer to Nell as though she were still alive and the party litigant.

Defendants moved to dismiss the complaint on the grounds (a) that, under its allegations, no breach of any contract had been shown; and (b) that, if there were a breach, the cause of action for damages lay in William, and after his death, in his personal representative and not in his widow. After two days or argument and the submission of written memorandum, the trial court granted the motion, on both grounds, and a formal judgment of dismissal was entered on September 12, 1962. Thereafter, plaintiff moved to reconsider; the motion to reconsider was granted; and, after further argument, the court, on October 11, 1962, entered a minute order which, in pertinent part, reads as follows: "... the Court, after reconsideration, re-affirms its ruling granting a judgment of dismissal." ■ On November 27, 1962, plaintiff filed a notice of appeal from "the judgment entered in the Superior Court on the 1st day of October, 1962."

have, for convenience, sometimes referred to it in the opinion as though it were the sole defendant.

[2]The complaint also pleaded a claim against the ambulance service used by Nell, on the ground that it had agreed to take William to the Kaiser Hospital and had breached that duty by taking him to another hospital. That claim was settled prior to trial and the action proceeded against Kaiser and Permanente only.

(Italics added.) It is obvious that there was no such judgment. The judgment entered on September 12, 1962, ceased to exist when the motion to reconsider was granted. The minute order of October 11, 1962, has the effect of a final judgment (Code Civ. Proc., § 581d; 3 Witkin, Cal. Procedure, 1891), but no order of that date is referred to in the notice of appeal. However, both parties have treated the appeal as being from the minute order (judgment) of October 11, 1962; we construe the reference to October 1st as being a mere typographical error and treat the notice as instituting an appeal from the order of October 11, 1962. (Cal. Rules of Court, rule 1 (a)*; cf. 3 Witkin, Cal. Procedure, Appeal, § 116 and cases there cited.)

I

■ The chief argument is over plaintiff's contention that defendant had contracted to provide emergency telephone and ambulance service on a 24-hour basis, and that it breached that duty. Contrary to the opinion of the trial court, we regard the showing made as sufficient to show a breach of contract. The basic contract provides: "EMERGENCY AMBULANCE SERVICE—Necessary ambulance service will be provided without charge within a radius of 30 miles from the nearest medical office or hospital at which service is rendered when such service is authorized by one of the doctors who have contractual arrangements with the Health Plan."[3]

Contemporaneously with the delivery of a copy of the basic contract defendant furnished William with three other documents. One was a membership card, carrying the words "In case of emergency call the number listed below of the nearest location available to you," followed by the listing of three numbers, one of which appellant alleged that she had called. Second was a booklet entitled "How To Use Your Health Plan ... And Where To Obtain Service," which contains a chapter heading entitled "In Case Of Emergency." This chapter, in part, contains the following: "Day or night, call the nearest Emergency Desk," followed by three telephone numbers. It then further provides: "Specially trained personnel are on duty at all times to answer your call. . . ."

---

[3] It is conceded that William and appellant were within the 30-mile area. No point is made as to the requirement for authorization by a doctor. In fact, counsel for defendant stipulated that, had appellant's call been completed, the person receiving it would, after getting pertinent information from appellant, have arranged for ambulance service.

*Formerly Rules on Appeal, rule 1(a).

Another booklet lists certain telephone numbers to be called in case of emergency, accident or illness and for home calls, and that these numbers could be reached day or night.

We think that all these documents must be read together as part of a single contract (*Cadigan* v. *American Trust Co.* (1955) 131 Cal.App.2d 780 [281 P.2d 332]) and that, when so read, they amount to a contract on the part of defendant to maintain a 24-hour telephone answering service for use in case of emergency as well as a 24-hour emergency ambulance service. ■ The several documents were prepared by defendant; all relate to the same general subject—namely, the benefits granted by the group insurance scheme; they are not contradictory, but rather supplement each other, in that the two booklets explain, in greater detail, the methods by which defendant proposed to carry out the duties summarily listed in the basic documents. If there be any ambiguity, it must be resolved against the insurance company which drafted them. (*Coit* v. *Jefferson Standard Life Insurance Co.* (1946) 28 Cal.2d 1 [168 P.2d 163, 168 A.L.R. 673] ; Civ. Code, § 1654.)

## II

■ However, we agree with the trial court that Nell, in her capacity of surviving wife had no standing to enforce the breach.

Appellant argues that the health plan was a community asset because paid for by community funds, and any cause of action for breach of the contract would also be a community asset. While appellant concedes the point that, during the life of the deceased, actions with respect to the community property or seeking damages for breach of contract relating to community property, would be brought by the husband, it is urged that: Upon the death of the husband intestate, the whole of the community property devolves upon the surviving spouse by reason of Probate Code, sections 201 and 202; thus, the cause of action for defendant's alleged breach of the health plan being a community asset vested in her, she was, in her individual capacity, the proper party to bring suit.

Even assuming, without deciding, that the cause of action for breach of the health plan contract was a community asset, we do not find this line of argument persuasive. Appellant's argument overlooks and understates some basic code provisions. While it is true that Probate Code, sections 201 and 202 give the wife the husband's half of the community property upon his death intestate, the husband's half is still sub-

ject to probate administration. Furthermore, Civil Code, section 954, and Probate Code, section 573, provide that an accrued cause of action seeking any kind of remedy for breach of an enforceable contract survives the death of the deceased and the action may be brought by his personal representative.

Nor do we find any excuse for not having this action commenced in the name of the personal representative of the deceased. Appellant states that no probate of the estate of the deceased was ever set up, for the reason his estate had no *tangible* assets. But the cause of action for breach of contract was an asset and Nell could have petitioned the superior court for her appointment as special administrator for the purpose of prosecuting this action (Prob. Code, § 460).

The cases cited by appellant in support of her position that a wife may maintain a suit in her own name for the recovery of community property, are cases where the wife seeks to protect her interest in the community property against the inconsiderate and fraudulent acts of the husband. These are cases where the wife, after the death of her husband, seeks to set aside one-half of a gift of community property made by the husband without her consent, or one-half of the portion of the proceeds from a life insurance policy purchased by premiums paid from community funds. Such is not the case here.

■ The fact that Nell may have been liable for the medical expenses furnished to her deceased husband because there was insufficient property in his estate to meet such expenses (*Credit Bureau of San Diego* v. *Johnson* (1943) 61 Cal.App. 2d Supp. 834 [142 P.2d 963]) did not give her any standing to sue in her individual capacity. If such a right were to exist it would have to be predicated on the theory that appellant was the third party beneficiary of the contract whereby defendant agreed to furnish the deceased with medical coverage, in that she would be receiving a benefit if defendant paid the medical expenses. However, in this situation appellant is no more than a remote or incidental beneficiary. Here William was directly interested in having his hospital bills paid, since he and his estate after death were primarily liable for such. (Prob. Code, § 951.1.) Appellant's liability, if any, is only secondary. Where a contract only incidentally benefits a third person, but is not expressly made for his benefit, he cannot recover thereon. (*Mottashed* v. *Central & Pac. Impr. Corp.* (1935) 8 Cal.App.2d 256 [47 P.2d 525].) Of necessity, such is the case here.

The fact that Nell, as wife of the insured member, was also covered by a companion contract is of no significance. Her rights under the second contract were only to have medical and hospital services performed for her own illnesses; that contract added nothing to the rights of William which are the ones herein sought to be enforced.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied November 19, 1963, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1963.