**Margaret LOWES, Appellant,**

v.

**PAN–AMERICAN LIFE INSURANCE COMPANY, a Corporation, Appellee.**

**No. 18065.**

United States Court of Appeals
Eighth Circuit.

Feb. 2, 1966.

Francis H. Kennedy, Jr., St. Louis, Mo., made argument and filed brief with

Jerome J. Duff, St. Louis, Mo., for appellant.

Bruce E. Woodruff, St. Louis, Mo., made argument and filed brief with Kenneth Teasdale and John P. Emde, St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and VAN PELT, District Judge.

VAN PELT, District Judge.

Appellant, who is the widow of Raymond J. Lowes, brought this action as plaintiff for recovery of benefits under a master policy of insurance issued by the appellee insurance company. The case was tried to the court without a jury on a stipulation of facts, the documents involved and the testimony of one witness. Judgment was entered for plaintiff upon the life insurance provision of the policy and denied under the accidental death benefit provision. We affirm the action of the trial court.

The sole question on this appeal is whether decedent Raymond J. Lowes on the date of his death was covered by the accidental death benefit provision of the policy.

The material facts are without substantial dispute. Decedent Lowes for some time prior to September 24, 1963, had been an employee of the Quality Dairy Company. He was informed on September 18, 1963, that his employment would terminate on September 24, 1963. It did so terminate and thereafter he was not an employee of the dairy. While working in the garage of his home on September 30, 1963, Mr. Lowes suffered burns from which he died on October 1, 1963. That the decedent's death was accidental is not disputed.

About September 1, 1958, appellee insurance company issued a group policy of insurance, sometimes called the master policy, to Milk Industry of St. Louis, Missouri-Employees Union Welfare Fund, an entity composed of certain Trustees acting pursuant to "an agreement or declaration of trust." Quality Dairy employees were among those so insured. This master policy was in force on the date of Mr. Lowes' death. During his employment he was issued under this master policy a certificate of insurance Number 1431.

The master policy is one document but consists of two policies. One is labeled Group Life Insurance Policy Renewable Term Insurance Non-Participating, Non-Contributory, and bears group policy Number GL–10331. The other policy is labeled Group Disability Policy Renewable Term Insurance Non-Participating, Non-Contributory, and bears group policy Number GD–10331. Each policy contains a separate termination clause headed "Termination of Individual Insurance." The effect of each termination clause is the same although the language is not verbatim. Each policy does provide for automatic termination upon "the date of termination of his employment with the employer." The life insurance policy contains language relating to waiver of premium and providing a conversion privilege which does not appear in the disability policy.

Effective February 1, 1962, an amendment was made to the Group Life Contract which appellee claims is decisive of appellant's case. The portion of the amendment material to this controversy provides that any employee within thirty-one days after "(a) the date of termination of his employment. * * *" upon written application to the company shall, without evidence of insurability, have issued to him an individual policy of life insurance subject to certain conditions and provisions, the first of which reads

> "(1) *such individual policy shall be* in any one of the forms then customarily *issued* by the Company, except term insurance, *without* total and permanent disability benefits or *additional benefits payable in event of accidental death;"*. (Emphasis ours.)

The policy also provided:

> " * * * provided, however, that in the event of death of the employee during such thirty-one (31) day period the Company shall pay to the

beneficiary as a death benefit under this group policy the maximum amount of insurance for which an individual policy could have been issued under the provision whether or not the employee shall have made written application for conversion."

Appellant's claim in part rests upon the provision just quoted because Mr. Lowes never applied for conversion. In addition, appellant relies upon a pamphlet, plaintiff's exhibit 1, entitled "Milk Industry of St. Louis, Missouri-Employees Union Welfare and Pension Funds." The purpose of this pamphlet was to outline for employees the provisions of the welfare and pension funds of the union. Appellant claims that the pamphlet was drafted and printed by the appellee insurance company. The insurance company does not dispute this. It was stipulated that neither Mr. Lowes nor his wife, prior to decedent's death, ever had a copy of this pamphlet or had knowledge of its contents.

Appellant argues that the pamphlet was issued as an amendment to the master policy and that by course of usage the pamphlet is incorporated as a part of the policy.

We do not need to rule upon either of these contentions or determine the effect of Mr. Lowes and his wife not having known of the pamphlet prior to his death. Viewing the pamphlet in the light most favorable to appellant, we conclude that it does not create or impose liability upon the insurance company to pay accidental death benefits to the widow or survivor of a former employee whose employment had terminated prior to the accident resulting in the former employee's death.

Appellant's references to the pamphlet on page 3 of her brief are out of context and thus may appear inconsistent with the policy. When the pamphlet is examined its meaning is clear. The cited portion from page 4 reads:

"HERE IS THE SCHEDULE OF BENEFITS
UNDER YOUR HEALTH & WELFARE
PROGRAM

| | Life Insurance | Accidental Death, Dismemberment and Loss of Sight |
|---|---|---|
| "Active Members | $5,000.00 | $5,000.00" |

The quoted portion from page 7 of the pamphlet that "Your insurance terminates 31 days after your employment terminates." appears under a section relating only to life insurance. The material portion of this section reads:

"LIFE INSURANCE FOR ACTIVE MEMBERS

"The amount of Life Insurance shown in the schedule will be payable to your beneficiary in the event of your death from any cause at any time.

"This amount will be paid in a lump sum or in installments.

"Your insurance terminates 31 days after your employment terminates. During this 31-day period you may convert the full amount or a portion of this amount to any form of permanent life insurance written by the Pan-American Life Insurance Company, at your age then, irrespective of the state of your health at any time."

At the top of page 6 of the pamphlet is found the following:

"ELIGIBILITY FOR BENEFITS

"All present and all new members in good standing who are active full-time Employees of any contributing Employer of the Welfare Fund shall become eligible for insurance on the

day following six months of continuous active employment."

The pamphlet does not extend the conversion rights following termination of employment to accidental death benefits or to the benefits for dismemberment and loss of sight, or for accident and sickness benefits.

The 1962 amendment to the master policy quoted above provides for the exact event now before the court, namely, death of a former employee during the thirty-one day period allowed for conversion, who has failed to apply for conversion. It grants decedent's survivor the maximum death benefit decedent could have obtained had he exercised his conversion privilege. It is clear from the master policy and the 1962 amendment that the converted policy which becomes effective at the end of the thirty-one day period, is issued without "additional benefits payable in event of accidental death."

To give to a former employee who fails to apply for conversion greater benefits than he would have obtained had he applied for conversion would be reading into the policy and pamphlet provisions not contained therein.

We conclude that the pamphlet is in no way inconsistent with the master policy and that no ambiguities appear in a reading of the two instruments. Thus it follows, using the trial court's language, that the "plaintiff is not entitled to recover under the accidental death portion of the policy."

 Missouri law is applicable to this case by reason of diversity jurisdiction, and supports this conclusion. The burden is upon appellant to show that the deceased employee was insured at the time of death. Satz v. Prudential Ins. Co. of America, 225 S.W.2d 480 (Mo.App. 1949). The Satz case, which involved a dispute over a contract of group insurance also held that "the rights of an employee or his beneficiary are to be determined under the provisions of the contract between the insurer and the employer." Satz v. Prudential Ins. Co. of America, supra, at 482.

As pointed out above, the master contract between appellee and the Union Welfare Fund has no provision for accidental death benefits after termination of employment and in affording the conversion privilege expressly negatives additional benefits in event of accidental death.

Appellant cites Wilson v. Kansas City Life Ins. Co., 233 Mo.App. 1006, 128 S.W. 2d 319 (1939); Fryer v. Kaiser Foundation Health Plan, Inc., 221 Cal.App.2d 674, 34 Cal.Rptr. 688; and Turley v. John Hancock Mutual Life Ins. Co., 110 Pa.Super. 578, 168 A. 356, affirmed, 315 Pa. 245, 173 A. 163 (1934); Bonzon v. Metropolitan Life Insurance Co., 143 S.W.2d 336 (Mo.App.1940), in support of her argument that the basic policy and the supplementary documents must be read together. These cases, involving documents which displayed ambiguities or contradictions, so hold. However, as previously stated, this court finds no ambiguity or inconsistency between the master policy and the pamphlet. Hence such cases are inapplicable.

██ Appellee has urged that this court will not "substitute its judgment for that of the trial court, which is not demonstrably wrong." Cavanagh v. Continental Casualty Co., 325 F.2d 975, 978 (8th Cir. 1964). It also argues that this court will also not attempt to "out predict" a trial judge with reference to a doubtful question of law of the state in which the trial judge sits. Homolla v. Gluck, 248 F.2d 731 (8th Cir. 1957). Both statements are correct. However, under the facts of this case, and the applicable law, we need not invoke these rules and do not rest our decision upon them.

We conclude, as did the trial court, that the documents, including the pamphlet, establish that the decedent on the date of his death was not covered under the accidental death benefit provision of the master policy. It follows that appellant is entitled only to the life insur-

ance benefits of $5,000.00 for which the trial court entered judgment. This, we believe, is the only permissible finding under the record of this case. The judgment of the trial court is affirmed.