[Civ. No. 51656. Second Dist., Div. Three. Apr. 25, 1978.]

EMILIO MENDEZ CANCINO, Plaintiff and Appellant, v.
FARMERS INSURANCE GROUP, Defendant and Respondent.

336

## COUNSEL

Silver & McWilliams and Lawrence R. Booth for Plaintiff and Appellant.

Hagenbaugh & Murphy, Irwin Waldman and Brand Cooper for Defendant and Respondent.

## OPINION

**POTTER, Acting P. J.**—Plaintiff Emilio Mendez Cancino appeals from a judgment for defendant Farmers Insurance Group after a demurrer to his complaint was sustained without leave to amend. The complaint sought damages for a breach of the defendant's obligation to deal with plaintiff fairly and in good faith in respect of his claim against it as an insured covered by the uninsured motorist provisions of a public liability policy issued by defendant to one Antonio E. Jiminez. The second amended complaint attached the policy and alleged that plaintiff "was an express 'insured' under the terms and conditions of said insurance policy," by virtue of the fact that he "was loading" the "insured" "motor vehicle" at the time he was struck by an automobile driven by an uninsured motorist.

The provisions of the policy extending uninsured motorist coverage stipulated that defendant would "pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." It defined "insured" for the purposes of such coverage as follows: "Insured means (1) the named insured or a relative, (2) any other person while occupying an insured motor vehicle. . . ."[1]

[1] Insurance Code section 11580.2, which mandates this coverage, contains a slightly different definition of "insured" as follows (*id.*, at subd. (b)): "[T]he term 'insured' means the named insured and the spouse of the named insured and relatives of either while residents of the same household while occupants of a motor vehicle or otherwise, heirs and any other person *while in or upon or entering into or alighting from* an insured motor vehicle . . . ." (Italics added.)

Defendant did not in the trial court, nor does it in this appeal, contend that plaintiff was not an insured under this clause, probably on the basis of the holdings in *Utah Home*

The complaint further alleged that (1) plaintiff's injuries were severe, permanent and disabling and that his claim against the uninsured motorist was "obviously worth at least One Million and no/100 ($1,000,000) Dollars"; (2) plaintiff made a demand upon defendant for benefits under the policy in the amount of $15,000 (the policy limits); and (3) that "defendants failed and refused to negotiate to settle plaintiff's claim in a timely manner, or according to their duty of good faith and fair dealing."

The complaint alleged damage from the delay incurred before defendant finally paid the policy limits in return for plaintiff's release expressly reserving the right to seek the damages described in the complaint. The prayer included $2,266.07 for attorney's fees, $500,000 compensatory damages and punitive damages in the sum of $10 million.

The sole basis of defendant's demurrer, upon the ground that the complaint failed to state a cause of action, was its claim that "a person not a party to the insurance contract may not sue or be sued for bad faith."

*Contentions*

Plaintiff contends that the insurer had a duty to deal in good faith and fairly with any person who was an "insured" under the uninsured motorist coverage mandated by Insurance Code section 11580.2 with respect to claims within such coverage. Defendant contends, to the contrary, that such duty is owed only to "insureds" who are parties to the insurance contract.

*Discussion*

██ The duty of an insurer to deal in good faith is an aspect "of the relationship between the defendant insurer and its insured." (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 14 [123 Cal.Rptr. 288, 538 P.2d 744].) Though an insurance contract is indispensable to the existence of such relationship and the insurer must by definition be a party, insureds often are not. This circumstance, however, does not alter the fact that the coverage is provided for their benefit and does not exempt the insurer from the obligations imposed by the public

*Fire Ins. Co.* v. *Fireman's Fund Ins. Co.* (1970) 14 Cal.App.3d 50, 54 [91 Cal.Rptr. 781], and *Cocking* v. *State Farm Mut. Automobile Ins. Co.* (1970) 6 Cal.App.3d 965, 969 [86 Cal.Rptr. 193], that as used in the Insurance Code provision, "upon" includes in close proximity.

policy of this state protecting insureds from "unfair . . . practices in the business of insurance." (Ins. Code, § 790.03.) We, therefore, conclude that the complaint stated a cause of action and the judgment must be reversed.

Though the statement of facts in the opinion does not make this fully apparent, the decision of our Supreme Court in *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d 9, actually passed upon the question before this court. In *Johansen,* plaintiff was injured "by the negligence of Gary Dearing, the minor son of Joyce Dearing." (*Id.,* at p. 13.) Gary was an insured under a public liability policy of which his mother Joyce was the named insured.[2] Plaintiff Johansen offered to settle her claim against both of the Dearings for the full amount of the policy. "Although defendant conceded the virtual certainty of a judgment against the Dearings in excess of the policy limits, it refused to adjust the matter, stating that it would only be willing to offer the policy limits if it were judicially determined that the policy did in fact provide coverage. [Fn. omitted.]" (*Id.,* at p. 13.) The jury awarded over $33,000 damages to Johansen. The insurer paid Johansen an amount which satisfied the judgment against Joyce Dearing. This resulted in "an outstanding judgment of $22,500 . . . against Gary Dearing." (*Id.,* at p. 14.) Gary, in exchange for Johansen's promise to release him from personal liability, assigned his rights against the insurer to her. Against this factual background, the court said (*ibid.*): "In analyzing this case, we note at the outset that the rights at issue here are those of Gary Dearing, the insured; plaintiff Johansen comes before us only as his assignee. Thus, our inquiry necessarily focusses on the nature of the relationship between the defendant insurer and its insured, Dearing, and the nature and scope of the resultant obligations. [Fn. omitted.]" In so stating, the court clearly based the insurer's obligation to settle the claim against its insured upon the "nature of the relationship between the defendant insurer and its

---

[2]The statement of facts in Johansen does not make this clear. It is, however, fully explained in the opinion of the Court of Appeal in *Cal. State Auto. Assn. Inter-Ins. Bureau* v. *Dearing* (1968) 259 Cal.App.2d 717 [66 Cal.Rptr. 852], to which the Supreme Court opinion refers. The statement of facts in the Court of Appeal decision describes the Dearings as "the named insured (Joyce E. Dearing), her minor son (Gary R. Dearing), who resided in her household, . . ." (*Id.,* at p. 719.) It also quotes the provisions of the policy defining insureds as follows (*ibid.*): "'(a) With respect to the owned automobile, (1) the named insured, (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured; (b) with respect to a non-owned automobile, (1) the named insured, (2) any relative, . . .' " It is thus apparent that Gary's status as an insured was based upon his having used the owned vehicle with Joyce's permission or having operated a nonowned vehicle as a relative residing in her household.

insured, [Gary] Dearing," who was neither a party to the insurance contract nor a named insured therein.

The same result was reached in *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1041 [143 Cal.Rptr. 415]. There, the permissive user's insurance carrier sued for damages for failure of the owner's insurer to settle within policy limits. The fact that the permissive user "was not a contracting party" (*id.*, at p. 1041) was held not to preclude liability for breach of the duty to settle within policy limits. The court held that though the permissive user was not a contracting party, he was "a party to the contract" "as one of a class for whose benefit the policy was expressly made" and was therefore "an express third party beneficiary," whose right "to enforce the contract extends to implied covenants." (*Id.*, at p. 1042.)

■ There is no difference between the duty of an insurer to settle an insured's liability claim and thus protect him from liability in excess of policy limits and its duty to settle the insured's claims to compensation directly from the insurer. These are both simply aspects of the same duty which is said to be based upon the implied covenant of good faith and fair dealing. With respect to uninsured motorist coverage, "[t]his implied obligation requires an insurer to deal in good faith and fairly with its insured in handling an insured's claim against it." (*Richardson* v. *Employers Liab. Assur. Corp.* (1972) 25 Cal.App.3d 232, 239 [102 Cal.Rptr. 547], disapproved on other grounds in *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 581, fn. 10 [108 Cal.Rptr. 480, 510 P.2d 1032].) The decision in *Johansen* is, therefore, binding on this court and determinative of this appeal.

Defendant's reliance upon the decisions in *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 577-578 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Truestone, Inc.* v. *Travelers Ins. Co.* (1976) 55 Cal.App.3d 165, 170 [127 Cal.Rptr. 386]; and *Austero* v. *National Cas. Co.* (1976) 62 Cal.App.3d 511, 515 [133 Cal.Rptr. 107], is misplaced.

*Gruenberg* held that certain defendants (agents and employees of the insurers) had no "duty of good faith and fair dealing" (9 Cal.3d at p. 577) to the insured. The court said in this respect (*id.*, at p. 576): "Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing." The quoted statement is no more than a

shorthand statement of the proposition that because these defendants were not parties to the insurance contract, they were not insurers and were not subject to any implied duty to deal fairly with the insured. Other portions of the *Gruenberg* decision are, moreover, fully consistent with the holding in *Johansen* that the duty of good faith owed by an insurer to its insured is based on the relationship between them, and not strictly upon contract. Thus, the court held that it was no defense to the claimed breach of the obligation to deal in good faith that the insured had not performed all the contractual obligations on his part to be performed. In this respect, the court said (9 Cal.3d at p. 578): "Therefore, even though the duty allegedly assumed by defendant insurers arises from an existing contractual relationship, this duty is independent of the performance of plaintiff's contractual obligations."

The holding in *Truestone* was that two individuals who were sole shareholders of a corporation could sue the insurer. The corporation and both shareholders were named insureds in the policy. Suit was brought against the corporation on a claim within the coverage of the policy. The claimant offered to settle within policy limits and the insurer refused. When the claim went to trial, the resulting judgment exceeded the policy limits by $35,000. The shareholders were held entitled to seek both compensatory and punitive damages. In so holding, the court noted (55 Cal.App.3d at p. 170): "Here the Campbells, equally with their closely held corporation, were parties to the insurance policy with Travelers. The duty created by the implied covenant of good faith and fair dealing ran equally to them." Nothing said by the court, however, suggests that insureds who are not parties to the insurance contract are not owed the same duty.

In *Austero,* the wife of an incompetent sued as guardian ad litem of her husband and individually on her own behalf for breach of the defendant insurer's duty of good faith in respect of its refusal to pay the husband disability benefits under a policy of which he was the only insured with respect to such benefits. The trial court sustained a demurrer to the wife's suit in her own behalf and entered a judgment dismissing those counts. In affirming, the court said (62 Cal.App.3d at pp. 516-517):

"Plaintiff seems to acknowledge that *she is not a party to the contract of insurance. She is not an insured,* and, except as to the death benefit, she is not an expressly named beneficiary. . . .

". . . . . . . . . . . . . . . . . . .

"Whether for better or worse, the historical development of a tort is an important factor in determining its scope (see Prosser, Law of Torts (4th ed. 1971) pp. 19-21), and, thus far, liability for 'bad faith' has been strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship. Where no such relationship exists, no recovery for 'bad faith' may be had. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 576.)

"Finally, plaintiff urges that the disability policy premiums were paid with community funds, that the policies and their proceeds constitute community property and that National's bad faith refusal to pay disability benefits under the policies constituted an invasion of her community property interest in the policies and their proceeds, entitling her to recover.[1]

"As we have already explained, an insurer's duty of good faith and fair dealing *is owed solely to its insured and, perhaps, any express beneficiary of the insurance policy.* Whatever plaintiff's property rights with respect to the policies and their proceeds may be, the fact remains that she is not a party to the contracts. As to disability benefits, plaintiff is at most an incidental or remote beneficiary, and, as such, can state no cause of action against National for breach of a duty, express or implied, arising from the contractual relationship. (Cf. *Fryer* v. *Kaiser Foundation Health Plan,* 221 Cal.App.2d 674, 678-679 [34 Cal.Rptr. 688]; *Chamberlin* v. *City of Los Angeles,* 92 Cal.App.2d 330, 332-333 [206 P.2d 661].)" (Italics added.)

The court's statement that the duty of good faith arises out of "an underlying contractual relationship" without which "no recovery for 'bad faith' may be had" (*id.,* at p. 517) must be read in context with the court's further statement that "an insurer's duty of good faith and fair dealing is owed solely to its insured and, perhaps, any express beneficiary of the insurance policy" (*ibid.*). So explained, it is consistent with the decision in *Johansen* and supports plaintiff's right in this case.

Defendant also relies upon the decision of our Supreme Court in the recent case *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584]. In *Murphy,* the plaintiff in a wrongful death suit recovered a judgment of $42,000 against Pollard. Allstate was Pollard's

---

"[1]To the extent it may be pertinent we note that the acts here involved occurred and this action was instituted prior to January 1, 1975, the effective date of the legislation giving wives equal control over community property, i.e., Civil Code sections 5125 and 5127. (See Stats. 1973, ch. 987, § 20, p. 1905; Stats. 1974, ch. 1206, § 7, p. 2610.)"

liability insurer. It defended Pollard but rejected a settlement demand within policy limits of $25,000. Without obtaining an assignment from Pollard, plaintiff brought an action against Allstate "alleging breach of the duty of good faith to its insured by having refused to settle within policy limits." (*Id.,* at p. 940.) Allstate was awarded judgment on the pleadings. This judgment was affirmed. The court described the duty to settle as follows (*id.,* at pp. 940-941):

"This court has observed that '[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement' (*Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 564 [212 P.2d 878]), that this principle is applicable to insurance policies, and that 'the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose such a duty' (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198, 68 A.L.R.2d 883]).

"More specifically, the insurer must settle within policy limits when there is substantial likelihood of recovery in excess of those limits. (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 16 [123 Cal.Rptr. 288, 538 P.2d 744]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 430 [58 Cal.Rptr. 13, 426 P.2d 173].)

"The duty to settle is implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose. (See *Shapero* v. *Allstate Ins. Co.* (1971) 14 Cal.App.3d 433 [92 Cal.Rptr. 244].)

"The insurer's duty to settle does not directly benefit the injured claimant. In fact, he usually benefits from the duty's breach. Instead of receiving an award near policy limits, he stands to obtain judgment exceeding policy coverage. For instance, in the present case plaintiff has already received an amount equal to her highest settlement demand, holding an unsatisfied judgment for an additional $17,500.

"The insurer's duty to settle—*running to the insured and not to the injured claimant*—is also demonstrated by *Shapero* v. *Allstate Ins. Co., supra,* 14 Cal.App.3d 433. The insured died leaving no asset other than the insurance policy. Thus, a judgment in excess of policy limits presenting no risk to the insured or to his heirs, the insurer had no duty to settle within policy limits." (Italics added.)

The court also concluded that plaintiff's claimed right to enforce the duty to settle was not supportable on the basis of the "third party beneficiary doctrine nor the Financial Responsibility Law . . . ." (*Id.,* at p. 944.) In this respect, the court said (*ibid.*):

"A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 590-591 [15 Cal.Rptr. 821, 364 P.2d 685]; 4 Corbin, Contracts (1951) §§ 775-777, pp. 8-28; 2 Williston, Contracts (1959) § 356A, pp. 835-842.) As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler. Permitting a third party to enforce a covenant made solely to benefit others would lead to the anomaly of granting him a bonus after his receiving all intended benefit. Because, as we have seen, *the duty to settle is intended to benefit the insured and not the injured claimant,* third party beneficiary doctrine does not furnish a basis for the latter to recover. Moreover, Allstate having paid plaintiff the policy limits, she has already received all benefit contemplated by the policy.

"Next, the Financial Responsibility Law does not require plaintiff be permitted to sue for breach of the duty to settle. Again, the duty is based not on the Financial Responsibility Law but rather on the implied covenant of good faith and fair dealing found in every contract. Unlike a failure to investigate the representations of the insured, a breach of the duty to settle does not involve the risk that a person injured by a negligent motorist will fail to receive the compensation called for by that law. Breach of the duty to settle will, if anything, allow the injured party to recover the amount of the offered settlement, perhaps an additional sum to the extent of the policy limits, and sums in excess of those limits from the negligent motorist. Because an insurer's refusal to accept a reasonable settlement does not diminish the injured claimant's recovery, the policy of compensating persons injured by negligent motorists is not frustrated." (Italics added.)

▪ Contrary to the situation described in *Murphy,* plaintiff herein is a party for whose benefit uninsured motorist coverage was included.[3] The intent of the contracting parties in this respect is dictated by the

---

[3]Compare *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group, supra,* 76 Cal.App.3d 1031, 1042, where the permissive user was held to be "an express third party beneficiary" of the owner's liability insurance policy.

provisions of Insurance Code section 11580.2, subd. (a)(1) which requires every "policy of bodily injury liability insurance" issued in this state to contain "a provision with coverage limits at least equal to the financial responsibility requirements . . . insuring the insured, his heirs or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle" (*ibid.*). This section further requires that as used therein, "the term 'insured' means the named insured and the spouse of the named insured and relatives of either while residents of the same household while occupants of a motor vehicle or otherwise, heirs and any other person while in or upon or entering into or alighting from an insured motor vehicle . . . ." (*Id.,* at subd. (b).) Persons such as plaintiff are required to be covered by virtue of the same provision which benefits the named insured. The intent to benefit all insureds has the same sources: (1) the general policy of the Insurance Code "to. not only prevent the astronomical accident toll in this state, but to also provide compensation for those injured through no fault of their own. . . ." (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 154 [23 Cal.Rptr. 592, 373 P.2d 640]); and (2) the specific policy expressed in Insurance Code section 790.03, subdivision (h)(5) which prohibits as unfair practice in the business of insurance "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

Unlike the situation presented in *Murphy,* to deny plaintiff in this case the benefit of the duty to negotiate in good faith *would* frustrate the policy of the Insurance Code. We therefore conclude that, under the facts alleged, plaintiff was entitled to have defendant negotiate in good faith.

The judgment is reversed and the cause remanded for further proceedings consistent with the views above expressed.

Allport, J., and Goertzen, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.