861 P.2d 692

Margret FOBES, a widow, for and on Behalf of herself as Personal Representative of The Estate of Richard W. Fobes, Plaintiff–Appellant, Cross–Appellee,

v.

BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC., an Arizona corporation, Defendant–Appellee, Cross–Appellant.

No. 1 CA–CV 91–0159.

Court of Appeals of Arizona, Division 1, Department A.

March 30, 1993.

Review Granted Nov. 4, 1993.

Arnett & Arnett by Wayne C. Arnett, Mark W. Arnett, Tempe, for plaintiff-appellant, cross-appellee.

Law Offices of Neil Vincent Wake by Pamela L. Vining, Phoenix, for defendant-appellee, cross-appellant.

## OPINION

KLEINSCHMIDT, Judge.

Margret Fobes sued Blue Cross and Blue Shield of Arizona for breach of contract, insurance bad faith and racketeering because Blue Cross refused to pay skilled nursing care benefits under a Medicare supplement policy issued to her husband, Richard Fobes. She appeals from an order granting Blue Cross's motion to dismiss those claims. Blue Cross cross-appeals from an order denying its request for attorney's fees pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–341.01(A).

### FACTS AND PROCEDURAL HISTORY

On appeal from a dismissal for failure to state a claim upon which relief may be granted, we presume that the facts alleged in the complaint are true. *Savard v. Selby*, 19 Ariz.App. 514, 508 P.2d 773 (1973). The complaint in this case alleged that at all material times Richard Fobes and Margret Fobes each had health and accident insurance coverage under separate "Senior Security Contract[s]" and "Catastrophic Rider[s]" issued by Blue Cross. These policies covered "disease, illness, ailment, injury or body malfunction eligible for Medicare benefits." Each provided benefits for "skilled nursing services" but excluded coverage for "custodial care."

In December of 1986, Richard Fobes was institutionalized with brain cell deterioration and dementia. Blue Cross consistently denied claims for care rendered to Richard Fobes after October 28, 1987, on the ground that the care he received was merely custodial and did not qualify as skilled nursing care compensable under his policy.

In August 1988, the Fobes jointly brought this action against Blue Cross based on its denial of claims for care rendered to Richard Fobes. They asserted claims for breach of the duty of good faith and fair dealing, breach of contract and racketeering. Richard Fobes died on September 18, 1988, while the action was pending, and the complaint was amended to assert claims on behalf of Margret Fobes both individually and as personal representative of her husband's estate.

Blue Cross moved to dismiss the second amended complaint to the extent it alleged claims on behalf of Margret Fobes individually. The trial court granted the motion, finding that "[p]laintiff has not established as to her spousal claims for 'bad faith' that defendant owed a duty of good faith to Mrs. Fobes in her individual capacity based on the existence of a contractual relationship between Plaintiff and Defendant."

Blue Cross applied for an award of attorney's fees against Margret Fobes in her individual capacity pursuant to A.R.S. § 12–341.01(A). By minute entry of October 31, 1990, the trial court ruled:

THE COURT FINDS:

1. The Defendant is the prevailing party with respect to the claims dismissed by this Court in its October 27, 1989 minute entry.

2. Defendant has not waived its claim for attorneys' fees.

3. Defendant's application for attorneys' fees satisfies the requirements of A.R.S. [§ ] 12–341.01.

. . . .

5. The Plaintiff is an elderly widow with limited resources and it would work an undue hardship to require her to pay Defendant's attorneys' fees incurred in connection with the motion to dismiss.

THEREFORE, IT IS ORDERED denying Defendant's application for attorney's fees.

The trial court later entered a formal judgment containing findings pursuant to Rule

54(b), Arizona Rules of Civil Procedure. This timely appeal and cross-appeal followed.

### APPELLANT'S INDIVIDUAL BAD FAITH CLAIMS

[2] The appellant, Margret Fobes, argues that the trial court erred as a matter of law in granting Blue Cross's motion to dismiss her individual bad faith claim. She contends that Blue Cross is potentially liable to her for bad faith even if it breached none of the provisions of her individual policy. Relying on *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986); *Kenelia v. Glens Falls Ins. Co.,* 171 N.J.Super. 144, 408 A.2d 144 (1979); and *Ateyeh v. Volkswagen of Florence, Inc.,* 288 S.C. 101, 341 S.E.2d 378 (1986), she argues that an insurer's duty of good faith and fair dealing extends not only to the insured, but also to the insured's spouse. She also contends that her own separate contractual relationship with Blue Cross imposed on it a duty of good faith and fair dealing that encompassed its performance under her husband's policy.

Division Two of this Court has expressly held that the tort of bad faith covers conduct between the insurance company and its insured, and that a stranger to the insurance contract can assert no claim for bad faith against the insurer. *St. Joseph's Hosp. & Medical Ctr. v. Reserve Life Ins. Co.,* 154 Ariz. 303, 306, 742 P.2d 804, 807 (App.1986). Our supreme court granted the hospital's petition for review of Division Two's opinion on the issues of negligent misrepresentation and promissory estoppel, but denied review on the issue of insurance bad faith. *St. Joseph's Hosp. & Medical Ctr. v. Reserve Life Ins. Co.,* 154 Ariz. 307, 742 P.2d 808 (1987). The supreme court stated:

> We agree with the court of appeals' holding that the evidence was insufficient as a matter of law to support a judgment for bad faith and punitive damages. The evidence presented not only failed to establish a claim of bad faith under the standard enunciated in *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723

P.2d 675 (1986), but also failed to support a judgment for punitive damages.

*Id.,* 154 Ariz. at 311, 742 P.2d at 812. It is open to question whether the supreme court thereby left intact Division Two's holding that a stranger to an insurance contract can have no claim for bad faith.

Ever since the tort of bad faith was first recognized in Arizona, in *Noble v. National Amer. Life Ins. Co.,* 128 Ariz. 188, 624 P.2d 866 (1981), it has been consistently viewed as limited by the contractual relationship between the plaintiff and the defendant insurer. *See Deese v. State Farm Mut. Auto. Ins. Co.,* 172 Ariz. 504, 838 P.2d 1265 (1992); *Clearwater v. State Farm Mut. Auto. Ins. Co.,* 164 Ariz. 256, 792 P.2d 719 (1990). In *Deese,* the court stated:

> [T]he implied covenant of good faith and fair dealing requires that an insurer treat its insured fairly in evaluating claims. "[T]he insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Rawlings v. Apodaca,* 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986) (citing *Parsons v. Continental Nat. Am. Group,* 113 Ariz. 223, 550 P.2d 94 (1976); *Egan v. Mutual of Omaha Ins. Co.* [24 Cal.3d 809, 169 Cal. Rptr. 691], 620 P.2d 141 (Cal.1979), *cert. denied,* 445 U.S. 912 [100 S.Ct. 1271, 63 L.Ed.2d 597] (1980)). *See also Walter v. Simmons,* 169 Ariz. 229, 238, 818 P.2d 214, 223 (App.1991) ("Although the duty of good faith is inherent in any insurance contract, it is not strictly a contractual obligation; *rather, it is an obligation imposed by law that governs the insurer in discharging its contractual responsibilities.*").

172 Ariz. at 507, 838 P.2d at 1268 (emphasis added). Our supreme court has also stated:

> The covenant requires that neither party do anything that will *injure the right of the other to receive the benefits of their agreement.* [Citations omitted.] The duty not to act in bad faith or deal

unfairly thus becomes a part of the contract and, as with any other element of the contract, the remedy for its breach generally is on the contract itself. [Citation omitted.] In certain circumstances, breach of contract, including breach of the covenant of good faith and fair dealing, may provide the basis for a tort claim. [Citation omitted.]

*Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985) (emphasis added).

The appellant correctly cites *Rawlings*, 151 Ariz. at 157, 726 P.2d at 573, for the proposition that a breach of the insurer's express covenant to pay claims is not a necessary element of a cause of action for bad faith. *Accord Deese*, 172 Ariz. at 509, 838 P.2d at 1270. Contrary to the appellant's implicit reasoning, however, *Rawlings* does not stand for the distinct proposition that no contractual relationship at all need exist between the plaintiff and defendant in a bad faith case. Nor does it stand for the proposition that an insurer's liability for bad faith may be predicated on a contractual relationship with the plaintiff separate from the policy through the non-performance of which the insurer is alleged to have damaged the plaintiff. The court in *Rawlings* stated:

> [F]irmly established law indicates that the insurance contract between plaintiffs and Farmers included a covenant of good faith and fair dealing, implied in law, whereby each of the parties was bound to refrain from any action which would impair the benefits which the other had the right to expect from the contract or the contractual relationship. We commented upon this in *Wagenseller*, where we stated that "the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to."
> *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. at 385, 710 P.2d at 1040.

*Id.* 151 Ariz. at 154–55, 726 P.2d at 570–71; *see also Twin City Fire Ins. Co. v. Superior Court*, 164 Ariz. 295, 792 P.2d 758 (1990) (primary carrier owes no duty of good faith and fair dealing on which excess carrier can bring bad faith claim absent equitable subrogation to insured's rights); *Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 708 P.2d 457 (App.1985) (judgment creditor must obtain assignment of insured's claim for bad faith before proceeding directly against insurer for liability in excess of policy limits).

The record in this case contains no support for the appellant's position that the Fobes' choice to purchase separate policies instead of a single policy covering both spouses was merely random or fortuitous. There is no dispute that the appellant and her husband were covered by separate Blue Cross policies, each providing potential coverage only for the person in whose name it was issued. Neither the appellant nor her husband was party to, or insured under, the other's policy. Accordingly, absent some viable alternative theory, Blue Cross owed appellant no duty of good faith and fair dealing under her husband's Medicare supplement policy on which appellant could base an individual claim for insurance bad faith, and the duty Blue Cross owed appellant to deal fairly and in good faith in performing under her own separate policy did not extend to its performance under her husband's.

The appellant's alternative theory is that she effectively enjoyed a species of third party beneficiary status under her husband's policy. The appellant does not expressly claim to be a "third party beneficiary" of her husband's policy. *See Norton v. First Federal Sav.*, 128 Ariz. 176, 624 P.2d 854 (1981) (intention to benefit third party must be indicated in contract itself; contemplated benefit must be both intentional and direct; it must appear that parties intend to recognize third party as primary party in interest); *Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App.1984) (third party must be a real promisee). She observes that in Arizona either spouse can contract community debts which must be satisfied first from community property, and asserts that she herself contracted directly with the facilities that rendered nursing care to her husband. While there is nothing in the record

demonstrating that the appellant directly contracted with the facilities that rendered nursing care to her husband, we assume this is true. Our analysis, *infra*, is unaffected.

■ In our opinion, a well-reasoned series of California decisions convincingly refutes the view that appellant had any claim to status as a third party beneficiary of her husband's Medicare supplement policy.

In *Fryer v. Kaiser Foundation Health Plan, Inc.*, 221 Cal.App.2d 674, 34 Cal. Rptr. 688 (1963), the appellant's husband had group health coverage through the defendant insurer. After the husband's death, the appellant brought an action against the insurer for breach of contract. Both the California Superior Court and the California Court of Appeal held that only the husband's personal representative could bring the action and that the appellant had no standing to recover. The court of appeal stated:

> The fact that Nell may have been liable for the medical expenses furnished to her deceased husband because there was insufficient property in his estate to meet such expenses [citation omitted] did not give her any standing to sue in her individual capacity. If such a right were to exist it would have to be predicated on the theory that appellant was the third party beneficiary of the contract whereby defendant agreed to furnish the deceased with medical coverage, in that she would be receiving a benefit if defendant paid the medical expenses. However, in this situation appellant is no more than a remote or incidental beneficiary. Here William was directly interested in having his hospital bills paid, since he and his estate after death, was primarily liable for such. [Citation omitted.] Appellant's liability, if any, is only secondary. Where a contract only incidentally benefits a third person, but is not expressly made for his benefit, cannot recover thereon. [citation omitted.] Of necessity, such is the case here.
>
> The fact that Nell, as wife of the insured member, was also covered by a companion contract is of no significance.

Her rights under the second contract were only to have medical and hospital services performed for her own illnesses; that contract added nothing to the rights of William which are the ones herein sought to be enforced.

*Id.* 34 Cal.Rptr. at 691–92.

Later, in *Austero v. National Casualty Co. of Detroit, Michigan*, 62 Cal.App.3d 511, 133 Cal.Rptr. 107 (1976), another division of the California Court of Appeal held that the wife of the insured under a disability policy could not recover for her own emotional distress caused by the insurer's bad faith breach of its implied covenant of good faith and fair dealing. The court stated:

> [T]hus far, liability for "bad faith" has been strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship. Where no such relationship exists, *no recovery for bad faith may be had.*
>
> [P]laintiff urges that the disability policy premiums were paid with community funds, that the policies and their proceeds constitute community property and that National's bad faith refusal to pay disability benefits under the policies constituted an evasion of her community property interest in the policies and their proceeds, entitling her to recover.
>
> As we have already explained, an insurer's duty of good faith and fair dealing is owed solely to the insured and, perhaps, any express beneficiary of the insurance policy. Whatever plaintiff's property rights with respect to the policies and their proceeds may be, the fact remains that she is not a party to the contracts. As to disability benefits, plaintiff is at most an incidental or remote beneficiary, and, as such, can state no cause of action against National for breach of a duty, express or implied, arising from the contractual relationship.

*Id.* 133 Cal.Rptr. at 110–11.

Most recently, the California Court of Appeal held that a spouse who was herself covered as a dependent under her hus-

band's medical policy could not bring an action for bad faith denial of benefits to her husband. *Hatchwell v. Blue Shield of California*, 198 Cal.App.3d 1027, 244 Cal. Rptr. 249 (1988). The court stated:

> Although she was eligible for health care benefits as a Dependent Subscriber, and as such may be termed a "coin-sured" or "dependent beneficiary," as she urges, this is not sufficient to establish standing to sue for breach of contract and bad faith based upon the denial of benefits to Michael. A non-party who is nevertheless entitled to policy benefits, such as an "insured" person under the terms of the policy or an express beneficiary, has standing only if she is the *claimant* whose benefits were wrongly withheld. (*See Cancino v. Farmers Ins. Group* (1978) [80 Cal.App.3d 335] 145 Cal.Rptr. 503; *Blake v. Aetna Life Ins. Co.* (1979) [99 Cal.App.3d 901] 160 Cal. Rptr. 528.)
>
> . . . .
>
> ... Although Denise is an insured person and an express beneficiary in regard to her own health care benefits, she is merely an incidental beneficiary in regard to Michael's benefits.

*Id.* 244 Cal.Rptr. at 253 (emphasis in original). Following *Austero*, the court also held that the wife's rights as a member of the marital community did not confer standing on her to assert her claim. *Id.* at 254; *accord Gantman v. United Pacific Ins. Co.*, 232 Cal.App.3d 1560, 284 Cal.Rptr. 188 (1991); *United Fire Ins. Co.v. McClelland*, 105 Nev. 504, 780 P.2d 193 (1989); *see also C & H Foods, Co. v. Hartford Ins. Co.*, 163 Cal.App.3d 1055, 211 Cal.Rptr. 765 (1984) (two shareholders of corporation insured under marine policies, not named as insureds, had no bad faith claim against insurer).

The cases on which appellant relies are distinguishable. In *Kenelia*, from the non-community property state of New Jersey, prior case law imposed on husbands the duty to support their wives, including the duty to pay for their necessary medical expenses. 408 A.2d at 144. The court held that the plaintiff husband had "incurred"

expenses for his wife's automobile accident injuries as a matter of law, and under the particular provision of New Jersey's No-Fault Act had a claim against the insurer for breach of the wife's medical benefits policy. *Id.* Arizona law imposes no comparable direct, immediate personal liability on appellant for her husband's nursing care expenses. Similarly, in *Ateyeh*, which followed *Kenelia*, local (noncommunity property) law rendered one spouse personally liable for the other's medical expenses under the "necessaries doctrine." 341 S.E.2d at 378. The court held that the plaintiff wife was entitled to maintain claims against her husband's medical insurer for breach of contract and bad faith. *Id.* Arizona does not share this feature of South Carolina law. While A.R.S. § 13–3611 makes it a crime to willfully fail to provide for a spouse's medical needs, there is no Arizona case or statute which renders one spouse wholly liable to a third party provider for services performed for the other spouse.

The appellant's reliance on *Delos v. Farmers Ins. Group, Inc.*, 93 Cal.App.3d 642, 155 Cal.Rptr. 843 (1979), is ill-founded. In that case, a husband and wife were both insured under the defendant insurer's automobile policy. The wife was injured by an uninsured motorist, but the insurer delayed in paying uninsured motorist benefits for her injury. The husband and wife both sued. Among other things, the husband sought damages for his own emotional distress. The California Court of Appeal held that the husband could maintain the claim. However, in *Williams v. Transport Indem. Co.*, 157 Cal.App.3d 953, 203 Cal.Rptr. 868, 874 (1984), the court later distinguished *Delos* on the ground that both spouses in that case had been named insureds to whom the insurer owed a duty. The *Williams* court stated, "*Delos* does not stand for the proposition that an independent duty is owed to a non-insured, non-claimant spouse." 203 Cal.Rptr. at 874; *accord Soto v. Royal Globe Ins. Corp.*, 184 Cal.App.3d 420, 229 Cal.Rptr. 192 (1986).

The cases on which appellant relies in her reply brief all stand for the inapposite prin-

ciple that an insurer owes a duty of good faith to all to whom coverage extends either under the language of the policy or by law, whether or not they are actually contracting parties. *See Johansen v. California State Auto. Assoc. Inter-Insurance Bureau,* 15 Cal.3d 9, 123 Cal.Rptr. 288, 538 P.2d 744 (1975); *Cancino v. Farmers Ins. Group,* 80 Cal.App.3d 355, 145 Cal.Rptr. 503 (1978); *Northwestern Mut. Ins. Co. v. Farmers Ins. Group,* 76 Cal.App.3d 1031, 143 Cal.Rptr. 415 (1978). Contrary to appellant's implicit contention, these cases do not support the view that the duty of good faith also extends to persons, like the appellant, who are neither insureds nor claimants under the policy in question.

The trial court correctly dismissed the appellant's individual claims against Blue Cross. We need not reach Blue Cross's contention that the settlement of the claims of Richard Fobes' estate extinguished the appellant's individual claims against it.

### THE TRIAL COURT'S DENIAL OF FEES AWARD UNDER A.R.S. § 12–341.-01(A) ON THE GROUND OF UNDUE HARDSHIP

■ On cross-appeal, Blue Cross challenges the trial court's decision to deny Blue Cross an award of attorney's fees under A.R.S. § 12–341.01(A) because appellant was "an elderly widow with limited resources and it would work an undue hardship to require her to pay Defendant's attorneys' fees incurred in connection with the Motion to Dismiss." Blue Cross asserts that appellant presented no evidence concerning the extent of her resources in objecting to Blue Cross's application for fees, and that the trial court's file in fact contained no such evidence from any source.

In response, appellant asserts that no court reporter was present during oral argument on Blue Cross's application for fees, and points out that the trial court ruled on several substantive motions and participated in a lengthy settlement conference with the parties. Appellant asserts: "Because the entire record of what the trial

court considered in making its determination is not available on appeal[ ], it is presumed that there is sufficient evidence in the record to sustain the trial court's decision."

In reply, Blue Cross points out that no oral argument was ever held on its application for fees and asserts that the discussion at the parties' settlement conference could not constitute an evidentiary basis for a determination of hardship. Blue Cross relies on *Woerth v. City of Flagstaff,* 167 Ariz. 412, 808 P.2d 297 (App.1990), for the proposition that a party asserting financial hardship has the burden of coming forward with *prima facie* evidence of such and that unsworn assertions of counsel do not meet that burden. While it may well be that the trial judge in this case has a true picture of the appellant's circumstances, we believe that Blue Cross is entitled to have the issue developed in a proceeding in which the appellant's financial situation is the focus of the inquiry. Pursuant to *Woerth,* we accordingly reverse the trial court's denial of fees pursuant to A.R.S. § 13–341.01(A) and remand for further proceedings on the issue of financial hardship. In addition, pursuant to *Allen R. Krauss Co. v. Fox,* 137 Ariz. 203, 669 P.2d 980 (App.1983), we refer Blue Cross's request for an award of attorney's fees incurred on appeal to the trial court for its consideration and disposition on remand.

### CONCLUSION

We affirm the judgment to the extent it dismissed appellant's claims against Blue Cross in her individual capacity. We reverse the judgment to the extent it denied Blue Cross's application for award of attorney's fees, and remand for a redetermination of that application in light of the principles of *Woerth,* 167 Ariz. at 412, 808 P.2d at 297. We also refer to the trial court Blue Cross's request for an award of attorney's fees on appeal.

Affirmed in part; reversed in part; remanded.

LANKFORD, P.J., and O'MELIA, J.,* concur.