RUTH MONROE, Special Adm'r of the Estate of Melissa Monroe, Deceased, Plaintiff-Appellee, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellant.

Fifth District   No. 5—91—0430

Opinion filed November 24, 1992.

Donald J. Dahlmann and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellant.

Douglas R. Mendenhall and Steven W. Selby, both of Allen, Mendenhall, Delaney & Associates, of Alton, for appellee.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

This case comes before us as a permissive interlocutory appeal pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308). The question we have agreed to consider is whether a passenger in an automobile has standing to bring a declaratory judgment action against an insurance company for its alleged violation of section 143a—2(3) of the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3)). The circuit court answered in the affirmative. We affirm and remand.

We adopt defendant's statement of facts, which was accepted by plaintiff, as our own. Only a few minor changes have been made.

On May 8, 1988, Melissa Monroe was a passenger in an automobile driven by Chance Gibbons which was struck by an automobile driven by John Warren. As a result of the collision, Melissa Monroe was fatally injured.

The vehicle driven by Chance Gibbons was covered by an automobile insurance policy issued by defendant, United States Fidelity and Guaranty Company, to James Gibbons. On January 14, 1991, plaintiff, Ruth Monroe, special administrator of the estate of Melissa Monroe, filed her amended complaint for declaratory relief against defendant. In her amended complaint, plaintiff alleged that the insurance policy issued by defendant to James Gibbons provided coverage for passengers in the vehicle, including plaintiff's decedent. As a result, plaintiff alleged her decedent was a third-party beneficiary of the insurance contract between James Gibbons and defendant. Plaintiff set forth that pursuant to section 143a—2(3) of

the Code, all motor vehicle insurers were required to offer uninsured/underinsured motorist coverage with limits equal to the bodily injury liability limits set forth in the insured's motor vehicle policy and to offer the insured the right to elect or to reject said uninsured/underinsured motorist coverage equal to the bodily injury liability limits. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3).) It was further alleged that defendant failed to adequately communicate to its insured, James Gibbons, the statutorily mandated offer of uninsured/underinsured motorist coverage in the following respects:

"(a) Did not explain the purpose and benefits of uninsured/underinsured coverage.

(b) Did not explain that he could purchase uninsured/underinsured coverage in the amount of $100,000 limit per person injured and the respective premium costs thereof.

(c) Did not specify the limits and premium costs of optional insurance coverage that he could intelligibly choose.

(d) Did not obtain written rejection from him to have the benefits of uninsured/underinsured coverage to the extent of his bodily injury coverage—$100,000.00 per person injured."

Plaintiff's amended complaint alleged that the aforementioned failures had the effect of denying uninsured/underinsured motorist coverage to the authorized limit and caused the insured, James Gibbons, to be without sufficient and adequate motor vehicle coverage for himself, his family members, and his passengers within the vehicle, including the deceased. Plaintiff further alleged that the coverage available under the policy of John Warren was insufficient to compensate for the death of plaintiff's decedent. Under a third-party beneficiary theory, the relief sought by plaintiff was for the court, by operation of law, to reform the motor vehicle insurance policy issued by defendant to include underinsured motorist coverage in the amount of $100,000 for each person.

On January 16, 1991, defendant filed a motion to dismiss the amended complaint for declaratory relief which asserted that plaintiff lacked standing to sue because defendant owed no duty to plaintiff's decedent under section 143a—2(3) of the Code. The only duty imposed under section 143a—2(3) of the Code, defendant argued in its motion, was to offer underinsured motorist coverage to its named insured, James Gibbons. A memorandum of law in support of the motion to dismiss the amended complaint for declaratory relief was filed by defendant on February 11, 1991, and plaintiff's responsive memorandum of law in opposition was filed on March 18, 1991.

On March 25, 1991, the trial court denied defendant's motion to dismiss. The trial court, however, noted that the issue raised in the motion was apparently one of first impression and allowed defendant to apply for a finding necessary for interlocutory appeal. On April 22, 1991, defendant filed a motion for certification pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)), which was granted on June 6, 1991. Defendant's application for leave to appeal was filed in this court on June 19, 1991, and was granted on July 16, 1991.

The issue before us, as previously stated, is whether a passenger in an automobile has standing to bring a declaratory judgment action against an insurance company for its alleged violation of section 143a—2(3) of the Code. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3).) Defendant first argues that the statute itself and the legislative debates surrounding underinsured motorist coverage indicate that standing to assert a violation of sections 143a—2(3) and (4) is limited to the purchaser of a policy. Defendant also contends that the definition of "underinsured motor vehicle" found in section 143a—2(3) of the Code is irrelevant to the issue of standing. We disagree.

The law is clear that in order to have standing to bring an action for declaratory relief there must be an actual controversy and the party seeking relief must possess a personal claim, status or right capable of being affected. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298.) In cases where it is alleged that injury is due to the violation of a statute, the doctrine of standing requires that the plaintiff be a member of the class designed to be protected by the statute or one for whose benefit the statute was enacted and to whom a duty of compliance is owed. (*Cottage-63rd Street Currency Exchange, Inc. v. Callahan* (1982), 104 Ill. App. 3d 586, 432 N.E.2d 1258.) The plaintiff must have sustained a real injury, which is fairly traceable to the defendant's conduct and which is likely to be redressed by the requested relief. *Springfield Rare Coin Galleries, Inc. v. Johnson* (1986), 115 Ill. 2d 221, 228, 503 N.E.2d 300, 303.

The statute in question, section 143a—2(3) of the Code, reads, in pertinent part:

> "For the purpose of this Act the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, *as defined in the policy,* and for which the sum of the limits of liability under all bodily injury liability insurance policies

or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided *the insured as defined in the policy* at the time of the accident." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3).)

This statute is remedial legislation, and we are required to liberally construe it in order to effectuate its purpose. (*S.N. Nielsen Co. v. Public Building Comm'n* (1980), 81 Ill. 2d 290, 298, 410 N.E.2d 40, 44.) In the instant case, the insuring agreement concerning uninsured motor vehicle coverage states:

"INSURING AGREEMENT

A. We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury:'

1. Sustained by an 'insured,' and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.'

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. 'Insured' as used in this Part means:

1. You or any 'family member.'

2. *Any other person 'occupying' 'your covered auto.'*

3. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. or 2. above." (Emphasis added.)

Section 143a—2(3) clearly allows a passenger in an automobile to recover under the automobile owner's underinsured motorist coverage if the owner's policy defines the passenger as an insured. Here, the policy provides that any person "occupying" the covered automobile is an "insured." Therefore, plaintiff's decedent, because she was "occupying" the Gibbonses' automobile, was an insured under the Gibbonses' policy now in question.

■ Defendant contends that section 143a—2 of the Code is "consumer" legislation and, as such, limits standing to the purchaser of the insurance policy. We agree wholeheartedly with defendant's contention that section 143a—2 of the Code is consumer legislation. The legislative debates surrounding its passage certainly

indicate that the purpose of the legislation was to protect the consumer. Our supreme court in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548, analyzed the statute in question and stated:

> "The language of section 143a—2(3) and the legislative debates surrounding its passage, as well as the passage of its predecessor, section 143a—1, indicate that the legislature recognized that soaring medical costs often left injured parties only partially compensated for their injuries. The legislature was obviously concerned with adequately compensating injured parties. As stated by Representative Epton during a House debate on what would later be codified as section 143a—2(3): '[T]his Bill is in behalf of the consumer.' House Debate, June 20, 1980, at 48." (109 Ill. 2d at 424-25, 488 N.E.2d at 550.)

In our estimation, however, the fact that this is "consumer" legislation does not prohibit an automobile passenger, whose only connection to the automobile in which he was injured and the insurance policy thereon is his status as a passenger, from having standing to bring a declaratory judgment action against the automobile owner's insurance company for its alleged violation of section 143a—2(3) of the Code. As the *Cloninger* court pointed out, injured parties should be adequately compensated and should have recourse when they are not.

The present situation, in our opinion, is no different from those instances in which a relative of the named insured has filed suit after an accident, claiming that the named insured's insurance company failed to make a proper offer of optional coverage to the named insured. In several such situations, a relative has brought suit against the insurance company seeking reformation of the named insured's policy without standing even being considered an issue. *E.g., Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, 525 N.E.2d 1076.

Defendant attempts to analogize the instant case to *Rockford Mutual Insurance Co. v. Economy Fire & Casualty Co.* (1991), 217 Ill. App. 3d 181, 576 N.E.2d 1141. In that case, the dispute revolved around which of two insurance companies must provide coverage for the death of a passenger, Larry Gene Sneed, who died in an automobile owned by Suzanne and Charles Fred but driven by John M. Durbin, son of Suzanne Fred. The defendant, Economy, issued a policy of insurance to Suzanne and Charles Fred in which the Freds were the named insureds. The policy contained a sepa-

rate "named driver exclusion endorsement" in which coverage afforded by the policy was to be voided if a claim or suit was the result of an accident in which the Fred automobile was being driven by John M. Durbin. Barbara Grace was the mother of the deceased passenger, Sneed. Grace was insured by Rockford. After Economy denied coverage for the death of her son because of the named driver exclusion, Grace made a claim against the uninsured motorist portion of her Rockford policy. Rockford then brought the declaratory judgment action, and the trial court entered summary judgment, finding that the Economy policy issued to the Freds was inapplicable. The trial court found that there was no conflict between the named driver exclusion endorsement and the uninsured motorist provision of the Economy policy, as the plaintiff had argued, and that the named driver exclusion endorsement did not violate public policy even though it voided uninsured motorist coverage. The declaratory judgment was affirmed on appeal. The *Rockford* court specifically stated:

> "The trial court found that the named driver exclusion endorsement, which bars any recovery for Sneed's death under the uninsured motorist provision of the policy, does not violate the public policy expressed in section 143a of the Illinois Insurance Code. That section requires that every insurance policy include coverage for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured vehicles and hit-and-run vehicles. The trial court found, and we agree, that the purpose of the statute, and the public policy expressed therein, is to provide protection to policyholders and named insureds for whom protection is specifically contracted, and not to provide protection to third parties who are strangers to the contract of insurance. Policyholders and named insureds may recover under their own insurance policy when they are injured as a result of an accident in or with an uninsured motorist or vehicle, just as an injured third party *may* [emphasis added] recover under his or her own uninsured motorist insurance if he or she is injured as a result of an accident in or with an uninsured motorist or vehicle. Thus, if a passenger is injured in an uninsured vehicle, *as in the instant case* [emphasis added], that passenger must look to his own insurance policy for recovery under *its* [emphasis in original] uninsured motorist provision. Because this was the intention and purpose of the statute, it does not violate public policy to recognize the

named driver exclusion endorsement in the Economy policy, which renders the vehicle insured thereunder an uninsured vehicle, treat it as such, and require Grace to seek recovery under her own Rockford policy for the death of her son." (217 Ill. App. 3d at 186-87, 576 N.E.2d at 1145.)

Defendant argues that this language indicates that a passenger has no recourse but to look to his own insurance policy for recovery under its uninsured motorist provision. We disagree with this interpretation.

■ We limited the holding of *Rockford* to the facts therein, as indicated by the above language. *Rockford* is distinguishable from the present case, because in *Rockford* the Economy policy included a named driver exclusion endorsement denying any coverage should an accident occur while John M. Durbin was driving the automobile covered by the Economy policy. Here, there was no such named driver exclusion endorsement. The automobile in which Melissa Monroe was riding was insured and the uninsured motorist provision specifically made her insured under its terms. There are far too many instances we can call to mind in which a passenger may not have his own policy to look to for recovery. Many people in our State, minors, elderly persons, and people who rely on mass transportation, do not own automobiles, and, thus, do not have their own insurance policy. When a passenger enters an automobile, he should realistically believe he is covered by the owner's policy. There are exceptions to this, such as the *Rockford* case, but the instant case does not fall into this category.

Defendant finally argues that to allow standing to a passenger of an automobile in a declaratory judgment action against an insurance company with whom the passenger had no dealings would allow lawsuits to be filed on the basis of total speculation and for that reason should not be allowed. In our estimation, such a fear does not justify denying plaintiff the opportunity to proceed. In order to reform the contract, plaintiff herein must prove defendant did, in fact, fail to make a proper offer of optional coverage to James Gibbons, the purchaser of the policy. (See *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548.) The proof required will be no different and no more difficult than if James Gibbons was the plaintiff.

There is no question but that an injured passenger would stand to benefit or lose from the purchaser's election or rejection of underinsured motorist coverage. Here, plaintiff's decedent's injury could be redressed if the Gibbonses' policy included more than the

minimum amount of uninsured motorist coverage and a like amount of underinsured motorist coverage up to the bodily injury limits of the policy. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3).) If defendant failed to make a proper offer of uninsured/underinsured motorist coverage to its insured, James Gibbons, plaintiff's decedent, an "insured" under the provisions of the policy in question, has been injured and those injuries can be redressed by the relief requested in plaintiff's complaint.

For the foregoing reasons, the order entered by the circuit court of Madison County, denying defendant's motion to dismiss, is affirmed, and this cause is remanded for further proceedings consistent with this opinion.

Affirmed and remanded.

HARRISON and RARICK, JJ., concur.