Randall **BERGERUD**, Plaintiff,

v.

**PROGRESSIVE CASUALTY INSURANCE; Progressive Insurance Company; and Does 1 through 5, inclusive, Defendants.**

No. 2:06CV0039–PMP–LRL.

United States District Court,
D. Nevada.

Aug. 17, 2006.

Bradley S. Mainor, Mainor Eglet Cottle, Lesley B. Miller, Mainor Eglet Cottle, Las Vegas, NV, for Randall Bergerud, Plaintiff.

Dennis M. Prince, Prince & Keating, LLP, John T. Keating, Prince & Keating, Las Vegas, NV, for Progressive Casualty Insurance Company, Defendant.

*ORDER*

PRO, Chief Judge.

Presently before the Court is Defendants Progressive Casualty Insurance and Progressive Insurance Company's Motion for Partial Summary Judgment (Doc. # 10), filed on March 24, 2006. Plaintiff Randall Bergerud filed a Response to Defendants' Motion for Partial Summary Judgment (Doc. # 11) on April 5, 2006. Defendant Progressive filed a Reply to Plaintiff's Response to Defendants' Motion for Partial Summary Judgment (Doc. # 13) on April 19, 2006.

## I. BACKGROUND

On December 12, 1999, Plaintiff Randall Bergerud was in an accident while driving a 1995 Saturn. (Defs.' Mot. for Partial Summ. J. ["Mot. Summ. J."], Ex. B.) At the time of the accident, Defendants Progressive Casualty Insurance Company and Progressive Insurance Company (collectively "Progressive") had issued an insurance policy covering the Saturn to C. Jane Bergerud Trust. (Mot. Summ. J., Ex. C; Pl.'s Partial Opp'n to Defs.' Mot. for Partial Summ. J. ["Opp'n"], Ex. 1, Ex. 2.) Plaintiff is Jane Bergerud's son, and resided with her at the time of the accident. (Opp'n at 2.)

Plaintiff filed a claim under the Policy for uninsured/underinsured motorist ("UM") benefits.[1] (Mot.Summ. J., Ex. D.) The Policy provides for UM coverage as follows:

> Subject to the Limits of Liability, if you pay a premium for Uninsured Motorist Coverage, we will pay for damages . . ., which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

Reply to Pl.'s Partial Opp'n to Defs.' Mot. for Partial Summ. J., at 3.)

---

1. Progressive concedes that Plaintiff may make this claim under the Policy. (Defs.'

1. sustained by an insured person;

2. caused by accident; and

3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

(Opp'n, Ex. 2 at 24 (original emphasis omitted).) The Policy's UM section defines an "insured person" as:

a. you or a relative, except when occupying a vehicle, other than a covered vehicle, without the express or implied permission of the owner;

b. any person occupying a covered vehicle with the express or implied permission of you or a relative;

. . . . .

*Id.* The Policy defines "You" to mean "the person shown as the named insured on the Declarations Page, and that person's spouse if residing in the same household." (*Id.* at 18.) Plaintiff's name does not appear on the Policy's Declarations Page nor is Plaintiff a listed driver under the Policy. (Opp'n, Ex. 2; Mot. Summ. J., Ex. C.)

On November 2, 2005, Plaintiff notified Progressive of his claim and requested settlement by December 2, 2005. (Mot. Summ. J. at 4, Ex. D.) On November 9, 2005, Progressive sought additional information to complete Plaintiff's claim evaluation. (Mot.Summ. J., Ex. E.) On December 6, 2005, Plaintiff filed suit in Nevada state court and on January 11, 2006, Progressive removed Plaintiff's action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Mot. Summ. J., Ex. A; Notice of Removal [Doc. # 1].) Plaintiff's Complaint alleges breach of contract (claim 1), breach of the duty of good faith and fair dealing (bad faith) (claim 2), violation of Nevada Revised Statute 686A.310 (claim 3), breach of fiduciary duty (claim 4), and fraud (claim 5). Plaintiff also seeks exemplary and punitive damages.

Progressive now moves this Court to grant partial summary judgment on Plaintiff's claims two through five and on Plaintiff's request for punitive damages. Progressive argues Plaintiff is a third-party claimant to whom the covenant of good faith and fair dealing does not extend because no contractual relationship exists between Progressive and Plaintiff as Plaintiff did not choose Progressive as his insurer, has not paid premiums, and is not named expressly in the Policy. Progressive further argues Plaintiff's adversarial position as a claimant for UM benefits negates the implied covenant of good faith and fair dealing and any fiduciary relationship. As to Plaintiff's claim of fraud, Progressive argues Plaintiff has not alleged fraud with the specificity required by Federal Rule of Civil Procedure 9(b). Finally, Progressive asserts the Court cannot award punitive damages for breach of contract, and Plaintiff may not request punitive damages under Nevada Revised Statute 42.005 because it applies only to breached non-contractual obligations where there has been oppression, fraud, or malice. Progressive argues it did not owe Plaintiff an implied good faith duty and thus did not breach non-contractual obligations for which Plaintiff may recover punitive damages.

Plaintiff responds that as an "insured" under the Policy, he has a contractual relationship with Progressive. Furthermore, Plaintiff argues he is a first-party claimant to whom Progressive has not upheld its duty of good faith. Plaintiff argues that because he is an insured first-party claimant with a contractual relationship, he has standing to sue for breach of the fiduciary relationship and the duty of good faith and fair dealing. Therefore, Plaintiff argues the Court should not grant summary judgment in favor of Progressive as to claims two and three. Plaintiff does not oppose

dismissal of his fraud claim, and does not respond to Progressive's arguments as to violation of Nevada Revised Statute 686A.310 and punitive damages.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## III. DISCUSSION

### A. Bad Faith (claim 2) and Fiduciary Duty (claim 4)

Progressive moves this Court to grant summary judgment as to Plaintiff's claims for bad faith and breach of fiduciary duty. Although Progressive agrees Plaintiff is an insured, it argues the implied covenant of good faith and fair dealing applies only when there is a contractual relationship between the insured and the insurer. Progressive asserts because Plaintiff was both a third-party claimant who did not detrimentally rely on Progressive, and a non-contracting, unnamed party with respect to the Policy, no contractual relationship exists between it and Plaintiff. Therefore, Progressive argues Plaintiff cannot state a claim for bad faith. Furthermore, Progressive argues the fiduciary nature of the relationship between Progressive as the insurer, and Plaintiff as the insured, arises because of the covenant of good faith and fair dealing. Progressive asserts because the covenant requires a contractual relationship, and no such relationship exists between Progressive and Plaintiff, it did not breach the fiduciary-like duty. Therefore, Progressive moves this Court to grant summary judgment as to Plaintiff's claims of bad faith and breach of fiduciary duty.

Plaintiff responds that because the Policy covers resident relatives and occupants of a covered vehicle as "insureds," and he was both, he is an insured and first-party claimant. Plaintiff further asserts because he fits under a defined class in the contract, he was contemplated as a party, and thus has a contractual relationship with Progressive. Furthermore, Plaintiff argues because he is a first-party insured and beneficiary of the insurance contract, a fiduciary duty exists which Progressive breached when it failed to act in good faith. Therefore, Plaintiff argues this Court should not grant Progressive's motion for summary judgment as to his bad faith and breach of fiduciary duty claims.

"Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), 'federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.'" *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir.2003) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415,

427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)). The Nevada Supreme Court's decisions bind this Court when interpreting Nevada state law. *Nat'l Labor Relations Bd. v. Calkins,* 187 F.3d 1080, 1089 (9th Cir.1999) (citation omitted).

 In Nevada, the covenant of good faith and fair dealing is implicit in every insurance contract. *U.S. Fid. & Guar. Co. v. Peterson,* 540 P.2d 1070, 1071 (Nev. 1975). Derived from the covenant of good faith and fair dealing is the fiduciary-like duty between an insurer and insured. *Powers v. United Services Auto. Ass'n,* 114 Nev. 690, 962 P.2d 596, 603 (1998). The fiduciary-like duty "is basically a statement of the kind of good faith duty owed by an insurer to a first-party insured." *Id.* (citing *Tynes v. Bankers Life Co.,* 224 Mont. 350, 730 P.2d 1115, 1124–26 (1986)). Therefore, in an insurance contract, the fiduciary nature of the relationship between insurer and insured is part of the covenant of good faith and fair dealing, a breach of which is bad faith. *Id.* "An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy." *Pemberton v. Farmers Ins. Exch.,* 109 Nev. 789, 858 P.2d 380, 382 (1993) (quoting *Peterson,* 540 P.2d at 1071). To assert a bad faith claim, Nevada law requires a contractual relationship. *United Fire Ins. Co. v. McClelland,* 105 Nev. 504, 780 P.2d 193, 197 (1989).

 Nevada has not addressed whether a non-contracting party who falls within a policy's definition of an "insured" and who claims benefits for himself under that policy has a contractual relationship with an insurer giving rise to the implied covenant of good faith and fair dealing. Where a state has not addressed a particular issue, a federal court must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Strother v. S. Cal. Permanente Med. Group,* 79 F.3d 859, 865 (9th Cir.1996) (quotation omitted); *Med. Lab. Mgmt. Consultants v. Am. Broad, Cos., Inc.,* 306 F.3d 806, 812 (9th Cir.2002). In making that prediction, federal courts look to existing state law without predicting potential changes in that law. *Moore v. R.G. Indus., Inc.,* 789 F.2d 1326, 1327 (9th Cir.1986). Although federal courts should not predict changes in a state's law, they "are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." *Air–Sea Forwarders. Inc. v. Air Asia Co., Ltd.,* 880 F.2d 176, 186 (9th Cir.1989) (quotation omitted).

 Although Nevada has not directly decided the present issue, Nevada has held insurers owe a duty of good faith to insureds who seek UM benefits. *Pemberton,* 858 P.2d at 380. The Nevada Insurance Code requires insurers to offer UM coverage to provide for "the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles ...." Nev.Rev.Stat. 690B.020(1). This protection is afforded "to any person insured under the policy." *Cont'l Ins. Co. v. Murphy,* 120 Nev. 506, 96 P.3d 747, 748 (2004). The Nevada Insurance Code is meant to "[i]nsure that policyholders, claimants and insurers are treated fairly and equitably[.]" Nev.Rev. Stat. 679A.140(e). Nevada directs courts to give the code's provisions "reasonable and liberal construction for the fulfillment of these purposes." Nev.Rev.Stat. 679A.140(2).

In contrast, third-party claimants do not have a contractual relationship with insurers, and thus have no standing to claim bad faith. *Gunny v. Allstate Ins. Co.*, 108 Nev. 344, 830 P.2d 1335, 1335–36 (1992).[2] However, in *Gunny*, the Nevada Supreme Court indicated a third-party claimant who is a specific intended beneficiary of an insurance policy might have a contractual relationship to support a bad faith claim. *See Gunny*, 830 P.2d at 1336 (citing *McClelland*, 780 P.2d at 197–98). Whether a party is considered a specific intended third-party beneficiary must be " 'gleaned from reading the contract as a whole in light of the circumstances under which it was entered.' " *Canfora v. Coast Hotels & Casinos, Inc.*, 121 P.3d 599, 605 (Nev.2005) (quoting *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal.App.4th 1717, 33 Cal. Rptr.2d 291, 296 (1994)).

A third party beneficiary whose bad faith claim is based on the insurer's denial of benefits to another party has no contractual relationship to support the claim. *McClelland*, 780 P.2d at 198. For example, in *McClelland*, the plaintiff was not a named insured, but insured under her husband's medical insurance policy as a dependent. *Id.* at 197. Both plaintiff and her husband sued their insurer for bad faith after the husband made a claim on his policy to cover medical expenses and the insurer disputed its responsibility for coverage. *Id.* at 195. Their insurer argued plaintiff had no standing to sue for bad faith because she was neither a contracting party nor a claimant for benefits. *Id.* at 197. The Nevada Supreme Court agreed and held a wife covered under her husband's insurance policy had no contractual relationship to support her bad faith claim based on the insurer's denial of her husband's claim for benefits. *Id.* at 197–98.

To support its conclusion, the Nevada Supreme Court cited *Hatchwell v. Blue Shield of California*, 198 Cal.App.3d 1027, 244 Cal.Rptr. 249, 253 (1988). *McClelland*, 780 P.2d at 198. In *Hatchwell*, the contracting named insured and his wife claimed bad faith against their insurer. *Id.* at 250. The named insured planned to have heart surgery, and his wife requested a list of cardiologists from the insurer whose fees the named insured's medical insurance policy covered. *Id.* The insurer refused, resulting in the named insured electing a cardiologist whose fees the policy did not cover. *Id.* After the operation, the insurer provided the list but insisted it would pay claims based on the pre-defined fee schedule, and because the named insured chose a cardiologist off the list, his claim was not completely covered. *Id.* The couple's insurer sought to dismiss the named insured's wife's bad faith claim because it argued she was not an "insured" or a contracting party and she had no contractual relationship with the insurer. *Id.* at 251–52. The court found she was an insured but not a contracting party. *Id.* at 252–53. Because California law requires a contractual relationship for a bad faith claim, the court held a non-contracting party had no standing to pursue a bad faith claim for the insurer wrongfully denying the contracting insured's benefits. *Id.* at 253.

In this discussion, the *Hatchwell* court made a distinction between a non-contracting party's bad faith claim when the insurer denies her benefits and when such a party tries to claim bad faith when

---

**2.** "A 'first-party' claim involves a claim made on an insurance policy by the insurer's own insured. In contrast, a claim made on the insurance policy by another against the insured is termed a 'third-party' claim." *Hart v. Prudential Prop. & Cas. Ins. Co.*, 848 F.Supp. 900, 902 n. 2 (D.Nev.1994)

the insurer denies another party's benefits. *Id.* at 253. "A non-party who is nevertheless entitled to policy benefits, such as an 'insured' person under the terms of the policy or an express beneficiary, has standing only if she is the claimant whose benefits are wrongfully withheld." *Id.* (citing *Cancino v. Farmers Ins. Group*, 80 Cal. App.3d 335, 145 Cal.Rptr. 503, 508–09 (1978) (original emphasis omitted)). Although the Nevada Supreme Court adopted *Hatchwell's* rationale, the Court did not express an opinion regarding *Hatchwell's* distinction or its citation to *Cancino*. *McClelland*, 780 P.2d at 198.

In *Cancino*, the California Court of Appeals considered whether an insurer's duty of good faith extended to parties whom the policy defined as "insured" for UM benefits, but who were not the contracting party. 145 Cal.Rptr. at 503–04. The contracting insured had an insurance policy which covered damage caused by an uninsured motorist. *Id.* at 503. The insurance policy defined any person occupying the covered vehicle as an "insured" for UM coverage. *Id.* at 504. The plaintiff was an occupant of the covered vehicle when it was struck by an uninsured motorist. *Id.* at 503. When the insurer did not settle the plaintiff's claim in a timely manner, he sued for bad faith. *Id.* at 504. The insurer argued it did not owe a duty of good faith to a party who did not contract for the insurance coverage. *Id.* The court held an insurer owes a duty of good faith to a non-contracting party whom the policy

defined as "insured." *Id.* at 504–09. "'[A]n insurer's duty of good faith and fair dealing is owed solely to its insured and, perhaps, any express beneficiary of the insurance policy." *Id.* at 507 (quoting *Austero v. Nat'l Cas. Co.*, 62 Cal.App.3d 511, 133 Cal.Rptr. 107, 111 (1976)).

Furthermore, the *Cancino* court stated "plaintiff herein is a party for whose benefit uninsured motorist coverage was included." *Id.* at 508 (comparing *N.W. Mut. Ins. Co. v. Farmers Ins. Group*, 76 Cal.App.3d 1031, 143 Cal.Rptr. 415, 421–23 (1978) which held an insurer owes a duty of good faith to a permissive user whom the policy defined as an "insured" because the permissive user was an express third-party beneficiary of the policy). The court noted the right of a non-contracting insured, as a third-party beneficiary, to enforce the covenants made by the contracting parties is "predicated on the contracting parties' intent to benefit [the non-contracting insured]" as required by California Insurance Code 11580.2(a)(1), which mandates insurance policies include UM coverage. *Id.* The code defined "insured" to include not only the named insured, but also individuals such as the plaintiff in *Cancino*. *Id.* Thus, the court upheld the plaintiff's bad faith claim. *Id.* at 509.

Other jurisdictions have followed California and allow a non-contracting party whom the policy defines as "insured" to sue for bad faith when claiming their own benefits.[3] Other jurisdictions independently have adopted the same position.[4]

---

**3.** *See, e.g., Donaldson v. Liberty Mut. Ins. Co.*, 947 F.Supp. 429 (D.Haw.1996) (applying Hawaii state law and holding employee covered under employer's insurance policy as "insured" had standing to sue insurer for bad faith); *Escalante v. Sentry Ins.*, 49 Wash.App. 375, 743 P.2d 832, 838 (1987) (holding noncontracting insured's estate had standing to claim bad faith); *cf. Fobes v. Blue Cross & Blue Shield of Ariz.*, 176 Ariz. 407, 861 P.2d

692, 697–98 (1993) (holding wife had no standing to sue for bad faith because she was neither a claimant nor insured under husband's policy).

**4.** *See, e.g., Klinger v. State Farm Mut. Aut. Ins. Co.*, 895 F.Supp. 709, 715–17 (M.D.Pa.1995) ("Thus, the duty to deal in good faith includes both policyholder and other 'insureds' under that policy."); *Gillette v. Estate of Gillette*, 163

■ Progressive has not cited authority beyond *McClelland* and *Gunny* to support its position that Nevada does not extend the duty of good faith to parties without an express contractual relationship. The Court concludes Nevada would agree with other jurisdictions and extend the covenant of good faith and fair dealing to a non-contracting party whom the policy defines as "insured" and is a claimant for his own benefits.

■ The tort of bad faith is tied to the implied covenant of good faith and fair dealing, which requires a contractual relationship. An insurance policy often defines an "insured" person to include parties other than the contracting party. When an insurer defines a non-contracting party as "insured," it makes a contractual agreement to offer benefits to each person fitting within that definition. Thus, such a non-contracting insured becomes an express third-party beneficiary of the insurance policy and thereby has a contractual relationship with the insurer. *See Northwestern Mut. Ins. Co.*, 143 Cal.Rptr. at 421. Therefore, when an insurer refuses to deal fairly with such a party, his bad faith claim is supported by a contractual relationship as an express third-party beneficiary of the insurance policy.

Nevada law supports this conclusion. In *McClelland*, the Nevada Supreme Court denied one of the plaintiff's bad faith claims because it was based on the denial of benefits to that plaintiff's husband, not denial of her own benefits. In reaching this result, the Nevada Supreme Court cited directly to *Hatchwell's* discussion of when a non-contracting party may claim bad faith. *Hatchwell* supported this explanation with *Cancino*, which is directly on point with Plaintiff's situation in this case. Furthermore, the *Gunny* decision held there was no contractual basis for a bad faith claim because the plaintiff in that case was suing as a third-party claimant, not an express third-party beneficiary. In ruling that third party claimants have no contractual relationship with an insurer, the *Gunny* Court parenthetically explained the plaintiff in *McClelland* had no contractual relationship to support a bad faith claim because "even though the wife was an insured person and express beneficiary regarding her own healthcare benefits, she was merely an incidental beneficiary with regard to her husband's benefits." *Id.* at 1336, 830 P.2d 1335.

A claimant seeking UM benefits is a first-party claimant because such benefits are available only to individuals whom an insurer has defined as "insured." Thus, the insurer has agreed to cover them regardless of whether they contracted for the insurance coverage or paid premiums. Furthermore, the Nevada Supreme Court's decision in *Pemberton* extended the duty of good faith to insureds claiming UM benefits without differentiating be-

Ohio App.3d 426, 837 N.E.2d 1283, 1289–90 (2005) (allowing wife covered under husband's policy as insured to sue for bad faith, even though she was not a contracting party); *Townsend v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 236, 237–38 (Okla.1993) (holding passengers in named insured's car were "insureds" and therefore had contractual relationship with insurer to support bad faith claims). *Cf. Monroe v. U.S. Fid. & Guar. Co.*, 237 Ill.App.3d 261, 177 Ill.Dec. 785, 603 N.E.2d 855 (1992) (holding decedent's estate had standing to sue for insurer's failure to offer uninsured motorist coverage to policyholder where decedent was a passenger and insured in car covered by insurer); *Dercoli v. Penn. Nat'l Mut. Ins. Co.*, 520 Pa. 471, 554 A.2d 906, 908–09 (1989) (holding policyholder's wife had standing to sue for bad faith when insurer failed to advise her of rights under the insurance policy). *But see Braesch v. Union Ins. Co.*, 237 Neb. 44, 55, 464 N.W.2d 769 (Neb.1991) (suggesting in dicta that non-policyholder third party claimants have no contractual relationship with insurer to support a bad faith claim).

tween contracting insureds and policy-defined insureds, such as third-party beneficiaries. Nevada's public policy, embodied in the Insurance Code, also does not differentiate between the two. Instead, it requires insurers to provide UM benefits to all parties the insurance policy defines as "insured."

 In the present case, Progressive concedes Plaintiff is an "insured." Furthermore, Plaintiff is claiming UM benefits for himself under the Policy and is a first-party claimant. Although Plaintiff's name does not appear on the insurance contract, he is in a class of non-contracting "insureds" who benefit directly from the policy because the Policy defines him as an insured for UM benefits. Therefore, Plaintiff has a contractual relationship with Progressive sufficient to support a claim for bad faith and breach of fiduciary duty. Thus, this Court will therefore deny Progressive's motion for summary judgment as to Plaintiff's claims for bad faith (claim 2) and breach of fiduciary duty (claim 4).[5]

## B. Nevada Revised Statute 686A.310 (claim 3)

Progressive also moves for summary judgment as to Plaintiff's claim for violation of Nevada Revised Statute 686A.310 ("Unfair Claims Act"). Progressive argues this Court's decision in *Crystal Bay General Improvement District v. Aetna Casualty & Surety Co.*, 713 F.Supp. 1371, 1376 (D.Nev.1989) supports its position that a non-contracting party has no private right of action under the Unfair Claims Act. Plaintiff does not specifically address Progressive's argument, but argues generally that Progressive owes him a duty of good faith and fair dealing.

The Unfair Claims Act makes engaging in certain activities an unfair practice, such as misrepresenting pertinent facts to an insured or claimant or telling insureds or claimants that arbitration awards will be appealed to hasten settlement. Nev.Rev. Stat. 686A.310(1)(a)-(p). The Unfair Claims Act makes an insurer liable to the insurance commissioner and "to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." Nev.Rev.Stat. 686A.310(2).

 The statute's plain language provides a private right of action for an insured party or claimant. In *Crystal Bay*, this Court held an insured had a private right of action for an insurer's breach of the Unfair Claims Act, but third-party claimants had no right of action under the Act. 713 F.Supp. at 1376. Subsequently, the Nevada Supreme Court agreed, holding third-party claimants have no private right of action under the Unfair Claims Act because there is no contractual relationship. *See Gunny*, 830 P.2d at 1336 (citing *Tweet v. Webster*, 610 F.Supp. 104, 106 (D.Nev.1985) and *Crystal Bay*, 713 F.Supp. at 1377.)

 Nevada does not exclude non-contracting parties from asserting a private right of action for violation of the Unfair Claims Act. Instead, only third-party claimants and parties without a contractual relationship with an insurer cannot assert a claim under the Unfair Claims Act. As previously discussed, Plaintiff is an insured, has a contractual relationship with Progressive, and is a first-party claimant.

**5.** Progressive also argues Plaintiff's adversarial position in claiming UM benefits negates the implied covenant of good faith and any fiduciary-like duty. In Nevada, an insurer owes a duty of good faith to an insured claiming UM benefits. *Pemberton*, 858 P.2d at 380. Therefore, Plaintiff's claim for UM benefits does not negate the covenant of good faith or the derivative fiduciary-like duty.

Therefore, the Court will deny Progressive's motion for summary judgment as to Plaintiff's claim for violation of Nevada Revised Statute 686A.310 (claim 3).

### C. Fraud (claim 5)

Progressive moves for summary judgment as to Plaintiff's claim for fraud. Progressive argues Plaintiff has failed to plead his claim for fraud with the required particularity. Furthermore, Progressive argues even if this Court finds that Plaintiff sufficiently pled fraud, he is unable to establish a prima facie fraud claim. Plaintiff agrees to dismiss the claim. (Opp'n at 8.) This Court therefore will grant Progressive's motion for summary judgment as to Plaintiff's fraud claim (claim 5).

### D. Exemplary and Punitive Damages

Progressive moves for summary judgment as to Plaintiff's request for punitive and exemplary damages. Progressive argues pursuant to Nevada Revised Statute 42.005, punitive damages are awarded when non-contractual obligations are breached. Progressive asserts to breach the non-contractual obligations of bad faith and Nevada Revised Statute 686A.310, first there must be a contractual relationship between the parties. Therefore, Progressive argues because Progressive and Plaintiff do not have a contractual relationship, it did not breach any non-contractual obligations. Furthermore, Progressive argues punitive damages are not awarded for breach of contract. Plaintiff does not specifically address Progressive's arguments, but generally argues Progressive owes him a duty of good faith and he has a contractual relationship with Progressive.

■ Nevada Revised Statute 42.005 states:

> [I]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant.

For breach of contract, punitive damages are not awarded. *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 934 P.2d 257, 263 (1997). But punitive damages are available when an insurer breaches the implied covenant of good faith. *Id.* As discussed previously, a plaintiff must have a contractual relationship with an insurer to assert a bad faith claim. *McClelland*, 780 P.2d at 197.

In this case, Plaintiff has a contractual relationship with Progressive. Thus, Plaintiff may recover punitive damages for bad faith. The Court therefore will deny Progressive's motion for summary judgment as to Plaintiff's request for punitive damages.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Partial Summary Judgment (Doc. # 10) is GRANTED as to Plaintiff's Claim 5. Claim 5 of Plaintiff's Complaint is hereby DISMISSED without prejudice.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (Doc. # 10) is denied in all other respects.