2015 IL App (1st) 141713

SECOND DIVISION
September 22, 2015

No. 1-14-1713

| | | |
|---|---|---|
| SAFE AUTO INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| MARIE FRY, | ) | |
| Defendant-Appellant, | ) | |
| | ) | No. 12 CH 34843 |
| | ) | |
| | ) | Honorable |
| (Kenneth Reed, | ) | Franklin U. Valderrama |
| | ) | Judge Presiding. |
| Non-Appealing Defendant). | ) | |

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justice Simon concurred in the judgment and opinion.
Justice Neville dissented, with opinion.

**OPINION**

¶ 1    Plaintiff Safe Auto Insurance Company ("Safe Auto") issued an automobile liability

insurance policy to Kenneth Reed ("Reed").  Defendant Marie Fry ("Fry") was a passenger in

Reed's vehicle when Reed was involved in a hit-and-run accident.  Fry was injured and

subsequently filed an uninsured motorist claim with Safe Auto seeking arbitration. Safe Auto

thereafter filed a declaratory judgment complaint in the circuit court alleging that it did not have

a duty to indemnify Fry because she was excluded from coverage by the "reasonable belief exclusion" in its policy. Later, Safe Auto filed a motion for summary judgment that was granted by the circuit court. Fry now appeals and argues that, where a driver reasonable belief exclusion contained in the Safe Auto contract for automobile liability insurance excludes uninsured motorist coverage for a permissive passenger, the exclusion as applied to the permissive passenger is unenforceable because it violates Illinois public policy. We agree. For the following reasons, we reverse the ruling of the circuit court granting summary judgment in favor of Safe Auto and remand for further proceedings.

¶ 2                                     BACKGROUND

¶ 3     Safe Auto issued an automobile liability insurance policy to Reed insuring his 2004 Pontiac Grand Am SE1 ("the vehicle") for the policy period beginning May 1, 2012 and ending November 1, 2012. Safe Auto's insurance contract contained an uninsured motorist coverage provision, "Part III – Uninsured Motorist Coverage," which obligated Safe Auto to pay for bodily injuries "1. sustained by an insured person; 2. caused by accident; and 3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle." "Insured person" is defined in the policy to include "any person occupying a covered vehicle."

¶ 4     Safe Auto's policy also contained the following exclusion:

> "Coverage and our duty to defend under Part I – Liability to Others, Part II –
> Excess Medical Payments Coverage, Part III – Uninsured   Motorist Coverage,
> and Part IV – Physical Damage Coverage does not apply to a loss:
>
>                                   * * *

16. If the driver used the covered vehicle without a reasonable belief that he was entitled to do so."

General Exclusion number 16 is referred to as the "reasonable belief exclusion."

¶ 5    On April 14, 2012, Reed's driver's license expired. The reason for the expiration of his driver's license is not at issue here. On May 14, 2012, while Reed was driving his vehicle with Fry as a passenger, the vehicle was involved in an accident with a vehicle that left the scene. Fry was injured as a result of the accident. On May 15, 2012, Reed was issued a new driver's license. Fry denied having knowledge that Reed was driving his vehicle without a valid license on the day of the accident.

¶ 6    Fry sought arbitration of her uninsured motorist claim with Safe Auto on August 2, 2012. In response, Safe Auto filed a complaint for declaratory judgment on September 14, 2012, to prevent Fry from recovering under the policy. On March 18, 2013, Safe Auto filed a motion for summary judgment, alleging that the "reasonable belief exclusion" barred coverage for an uninsured motorist claim. On September 16, 2013, after argument and supplemental briefing, the circuit court granted Safe Auto's motion for summary judgment. The circuit court held:

"Reed, who did not have a valid driver's license at the time of the subject collision, could not, as a matter of law, have a reasonable belief that he was entitled to drive. If the driver, Reed, did not have a reasonable belief that he was entitled to use the vehicle, coverage under the plain language of the policy, is [sic] excluded to any loss, including losses to any insured person. Fry, as a passenger and permissive user, constitutes an insured under the policy. Fry, however, is barred from coverage due to Reed's exclusion."

3

Fry's subsequent motion to reconsider was denied May 7, 2014. Fry now appeals the September 16, 2013 order granting summary judgment and the May 7, 2014 order denying her motion to reconsider.

¶ 7                                    ANALYSIS

¶ 8     The Safe Auto automobile insurance policy issued to Reed contained an uninsured motorist (UM) provision with an exclusion for the insurer's coverage and duty to defend a loss "if the driver used the covered vehicle without a reasonable belief that he was entitled to do so." Fry argues that the circuit court erred when it granted summary judgment in favor of Safe Auto, and her subsequent motion to reconsider, based upon the reasonable belief exclusion in Reed's insurance policy because it is void as it violates Illinois public policy.

¶ 9     "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is only appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Internal quotations marks omitted.)  *Id*. A court must construe the "pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent" in determining whether a genuine issue as to any material fact exists. *Id.*

¶ 10    Summary judgment is precluded where "the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id*.  Summary judgment should be allowed "only where the right of the moving party is clear and free from doubt."  *Id*. (citing *Adams v. Northern Illinois Gas Co*., 211

Ill. 2d 32, 43 (2004) (and cases cited therein). Reviewing courts review appeals from orders granting summary judgment *de novo*. *Id.*

¶ 11     The public policy of this state is to protect members of the public injured in vehicular accidents. This public policy, as reflected in state statutes and well-established case law, includes mandatory liability insurance to compensate for injuries caused by the negligent operation of a vehicle by the owner or other permitted driver. 625 ILCS 5/7-601(a) (West 2010); *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129 (2005) (the "principal purpose" of the mandatory liability insurance requirement is "to protect the public by securing payment of their damages"). Importantly, and significantly, public policy, as declared by the General Assembly, requires vehicle owner liability policies to provide specific coverage to "insure not only the persons named in the policy, but also 'any other person using or responsible for the use' of the subject vehicle with the express or implied permission of the insured." *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 401 (2010) (quoting 625 ILCS 5/7-317(b)(2) (West 2004)). To enhance this public policy, there is an additional requirement that vehicle liability insurers provide coverage to protect the public where a personal injury loss is caused by an uninsured or hit-and-run vehicle and recovery from the tortfeasor is not possible (UM coverage). 215 ILCS 5/143a (West 2010). An insured under the policy's liability provision must be an insured under the UM coverage.  *Schultz*, 237 Ill. 2d at 403 ("Moreover, the UM coverage must extend to all who are insured under the policy's liability provisions. If a person constitutes an insured for purposes of liability coverage under a policy, the insurance company may not, either directly or indirectly, deny uninsured-motorist coverage to that person."). Without statutorily mandated UM coverage, damages caused by an uninsured

or hit-and-run driver would result in an unjust burden on the public to suffer a loss without just compensation due to the negligence of another. *Putnam v. New Amsterdam Casualty Co.*, 48 Ill. 2d 71, 89 (1970) ("the reasonable purpose of the statutory uninsured motorist provisions is to assure that compensation will be available to policyholders, in the event of injury by an uninsured motorist, to at least the same extent compensation is available for injury by a motorist who is insured in compliance with the Financial Responsibility Law"); *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 176 (1977); *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992).

¶ 12    Safe Auto argues that extending its reasonable belief exclusion to deny UM coverage for a permissive passenger does not violate Illinois public policy and points to our supreme court's decisions in *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424 (2010), and *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391 (2010) in support.  In *Founders*, our supreme court considered six consolidated cases against either a named insured *driver* or *permissive driver* who never had a valid driver's license or a *driver* who had a suspended license at the time of the accident. *Founders*, 237 Ill. 2d at 429.  The *Founders* court examined a reasonable belief exclusion and held that it was not against public policy because no driver could have a reasonable belief that he was entitled to drive in Illinois without a valid license.  *Id*. at 445. *Founders* also held that the reasonable belief exclusion applies equally to both the named insured and anyone using the vehicle. *Id.*  However, the court was clear that its decision was narrowly tailored to the specific issues before it.  "The issue before us is much narrower. The issue is whether, as a matter of law, a person without a valid driver's license can have a reasonable belief that he or she *is entitled to drive*." (Emphasis added.) *Id*. at 440. "Irrespective of whether a

6

person owns the vehicle, or is a permissive user, without a valid license, a person cannot have a reasonable belief that he or she is entitled to drive in this state. Without a valid license, a person has not been given the 'right' to drive; has not been 'qualified' to drive; has not been 'furnished with proper grounds' for doing so." *Id*. at 438 (citing *Century National Insurance Co. v. Tracy*, 339 Ill. App. 3d 173 (2003)).

¶ 13    The foregoing quoted passages makes clear that *Founders* considered only the issue of liability coverage in relation to drivers that did not have or never had a valid driver's license when they incurred liability for causing a vehicular accident. The court left open the question of whether the exclusion created an ambiguity as to whether coverage applied in other situations. "That the exclusion could conceivably apply in other factual circumstances does not mean that the exclusion is ambiguous as to unlicensed drivers." *Id*. at 440. The recognition by the supreme court that it was not considering whether the reasonable belief exclusion applied in "other factual circumstances" is a clear statement that the finding in *Founders* is not dispositive of Fry's claim as Safe Auto contends.

¶ 14    Safe Auto finds it significant that shortly before its ruling in *Founders*, our supreme court issued its decision in *Schultz*, 237 Ill. 2d at 394. The issue decided in *Schultz* was "a single issue: does Illinois law permit insurers to issue motor vehicle liability policies in which occupants of a covered vehicle are afforded uninsured motorist (UM) coverage but excluded from underinsured (UIM) coverage?" *Id*. The policies in *Schultz* include "occupants" as a defined "insured" under the liability and UM coverage provisions, however, "occupants" were not included as a defined insured under the UIM provision, therefore, it was argued by the insurer, occupants were not provided UIM coverage under of the policy. *Id*. The court noted that pursuant to section 7-

317(b)(2) of the Illinois Vehicle Code (625 ILCS 5/7-317(b)(2) (West 2004)) insurers are required to "insure not only the persons named in the policy, but also 'any other person using or responsible for the use' of the subject vehicle with the express or implied permission of the insured." *Schultz*, 237 Ill. 2d at 401 (quoting 625 ILCs 5/7-317(b)(2) (West 2004)). The court took specific aim at the language in section 7-317(b)(2) finding that permissive users are the same as the named insured for liability coverage purposes stating "it is important to note the language chosen by the legislature. The law does not refer to permissive drivers. It speaks in terms of permissive users." *Id*. The court held, consistent with other jurisdictions, "that for purposes of motor vehicle insurance policies, 'use' is not limited to operating or driving a motor vehicle. It also includes riding in one as a passenger" (*id*. at 402) and construed "Illinois' mandatory liability coverage requirements to extend to permissive passengers as well as permissive drivers. Both must be treated as insureds for purposes of liability coverage." *Id*. at 403.

¶ 15     The *Schultz* court then considered the requirement of UM insurance under section 7-601(a) of the Vehicle Code (625 ILCS 5/7-601(a) (West 2004)) and under-insured motorist coverage under section 143a-2 of the Illinois Insurance Code (UIM coverage) (215 ILCS 5/143a-2 (West 2004)) and noted "[i]f a person constitutes an insured for purposes of liability coverage under a policy, the insurance company may not, either directly or indirectly, deny uninsured-motorist coverage to that person." *Schultz*, 237 Ill. 2d at 403. The court emphasized "the category of those insured under a policy's liability provisions must always include permissive users, and permissive users includes permissive passengers as well as permissive drivers." *Id*. at 404.

¶ 16     Safe Auto misses the distinction articulated in *Schultz*: permissive passengers and drivers are different categories of users, however, both must be covered as a matter of public policy. Safe Auto's argument that *Schultz*, which extends coverage to a permissive passenger, is precedent for excluding coverage for a permissive passenger based on a driver reasonable belief exclusion, simply does not follow. Although insurers have some latitude in determining who to insure, "[o]nce it has been determined who will be insured under the liability section of the policy, the insurer may not, either directly or indirectly, deny UM or UIM coverage to an insured." *DeSaga v. West Bend Mutual Insurance Co.*, 391 Ill. App. 3d 1062, 1070 (2009); *Schultz*, 237 Ill. 2d at 405. Denial of UM coverage to permissive passengers by application of a reasonable belief exclusion effectively allows insurers to do what public policy forbids because "once it has been determined who qualifies as an insured for purposes of liability coverage, that determination must be applied consistently for purposes of UM and UIM coverage." *Id.*

¶ 17     As a permissive passenger, Fry clearly is an insured and she cannot be directly or indirectly denied coverage because of a driver exclusion. "It is only after the parties designate the 'insureds' that the statute and case law become applicable and prohibit an insurance company from either directly or indirectly denying uninsured-motorist coverage to an 'insured.' " *Heritage Insurance Co. of America v. Phelan*, 59 Ill. 2d 389, 395 (1974). Fry is an insured under this policy and application of the reasonable belief exclusion to deny her UM coverage as a permissive passenger denies her the protection intended by the General Assembly in violation of public policy.

¶ 18     In seeking to deny coverage, the insurer in *Schultz* argued that the term "permissive users" was limited to "drivers," however, the court rejected this argument because it would

"necessitate that we read into the governing statutes a distinction which the legislature itself has not made." *Schultz*, 237 Ill. 2d at 407-08. Contrary to Safe Auto's contention, the finding in *Schultz*, that Illinois public policy requires that permissive passengers have the same coverage as other insureds under the policy's liability provision, does not furnish the insurer a valid basis to deny Fry, a permissive passenger (user), coverage under the UM provision because of a reasonable belief exclusion applicable to the driver.

¶ 19    Safe Auto melds language from *Schultz* and *Founders* to argue that shortly after the *Schultz* court ruled that section 7-317(b)(2) of the Vehicle Code requires equal coverage of drivers and permissive users, *Founders* held that the reasonable belief exclusion applied to permissive users. This argument ignores the obvious context in which the court used the terms "driver" and "user" and results in the distorted perspective that would allow insurers to exclude from coverage permissive users when it excludes unlicensed drivers under a reasonable belief exclusion. This does not follow. Considering the facts and issues in *Schultz* and *Founders* together, these combined rulings are: insurers may exclude drivers who do not have a reasonable belief they are permitted to drive, including permissive *drivers* who are not the named insured (*Founders*) and auto liability insurers that provide UM coverage to defined insureds (*e.g.*, owner, family, *permissive occupants*, permissive nonowner drivers) must also provide UIM coverage and cannot exclude any category of insureds (owner, family, *permissive occupants*, permitted nonowner drivers) from UIM coverage (*Schultz*). *Schultz* dealt with nondriver/permissive user UIM coverage, not driver liability coverage. *Founders* dealt with driver liability coverage, not nondriver permissive user UM coverage. This appeal involves the denial of UM coverage for a permissive passenger based on a policy exclusion that applies to a driver. The issues in this

appeal, *Schultz* and *Founders* are completely different, involve a completely different analysis and implicate public policy in completely different ways.

¶ 20     Safe Auto further argues that *Schultz* stands for the proposition that permissive users are the same as permissive drivers and named insureds and that *Founders* held that a reasonable belief exclusion does not violate section 7-317(b)(2), therefore, the reasonable belief exclusion applicable to permissive drivers applies equally to permissive nondriver users. Safe Auto then concludes that Fry, as a permissive passenger, is a permissive user and, as a permissive user, Fry is bound by the driver exclusion because it applies to permissive users. This simplistic approach conveniently, and incorrectly, conflates the analysis in *Founders,* where the court considered the effect of an exclusion that applied to one category of insured (owners) on a second category of insured (permissive drivers, a subset of permissive users) while not in any way considering its effect on a third category of insured (permissive passengers, another subset of permissive users). The public policy reflected in section 7-317(b)(2) requires coverage of all subsets of permitted users: named insured, family members (if applicable), permissive drivers and permissive passengers. *Id.* at 400-03. To allow an exclusion that applies to "drivers" to also exclude "passengers" is contrary to the public policy established under section 7-317(b)(2) and the mandatory liability and UM provisions of this state.

¶ 21     Fry argues that the recent opinion in *American Access Casualty Co. v. Reyes*, 2013 IL 115601, confirms the legislative intent to protect permissive passengers like her.  In *Reyes*, after two pedestrians were injured by Reyes, her insurer, American Access, denied liability coverage. The auto liability policy named Reyes as the vehicle owner/titleholder/named insured. However, the policy also showed her as "excluded" on the declarations page and on an endorsement that

excluded liability coverage for bodily injury or property damage caused by an excluded operator. "Thus, under the policy, Reyes was the sole 'named insured' but she was excluded from coverage." *Id*. ¶ 4.

¶ 22     The *Reyes* court ruled that automobile liability policies must cover both the named insured and permissive users of the vehicle, relying in part on *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group,* 182 Ill. 2d 240 (1998), and *State Farm Mutual Automobile Insurance Co. v. Smith,* 197 Ill. 2d 369 (2001). In *Universal Underwriters Group*, the court concluded that section 7-601(a), together with section 7-317(b)(2), mandate that "a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission." *Universal Underwriters Group*, 182 Ill. 2d at 244. In *Smith*, the court stated that "[s]ection 7-317(b)(2) is clear. It mandates that a motor vehicle liability policy, or a liability insurance policy, cover the named insured and any other person using the vehicle with the named insured's permission." *Smith*, 197 Ill. 2d at 374.

¶ 23     Clearly, permissive users are an important category of insured that must be protected. For example, in *Universal Underwriters Group*, during a test-drive, a car dealer's customer caused an accident. *Universal Underwriters Group*, 182 Ill. 2d at 241. The dealer's insurer tried to avoid coverage claiming its policy only covered the dealer and its employees, not customers performing a test-drive. *Id*. at 241-42. The supreme court referenced section 7-317(b)(2) of the Vehicle Code (an owner's policy "[s]hall insure the person named therein *and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured*" (emphasis added) (625 ILCS 5/7-317(b)(2) (West 1996)) and found

12

the statutory requirement was within the policy and applied to the customer and the accident. *Universal Underwriters Group*, 182 Ill. 2d at 244-46. "Accordingly, a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission." *Id*. at 244. *Universal Underwriters Group* enforced the public policy that the liability policy must cover the "named insured" and "any other person using the vehicle" with permission. *Id*.

¶ 24    In addition to its misapplication of the *Schultz* analysis of section 7-317, Safe Auto argues a named driver exclusion approved in *Rockford Mutual Insurance Co. v. Economy Fire & Casualty Co.*, 217 Ill. App. 3d 181 (1991) was "favorably" cited in *Reyes*, and is no different than this exclusion and its effect to deny UM coverage for a permissive passenger. This argument is disingenuous at best, especially where the *Reyes* court stated that "none of these cases [including *Rockford*] addressed the question of whether the sole named insured can be excluded and none of these cases held that a named driver exclusion can override the plain language of section 7-317(b)(2)." (Emphasis omitted.)  *Reyes*, 2013 IL 115601, ¶ 15.

¶ 25    The conclusion that this reasonable belief exclusion is unenforceable as against public policy as applied to a permissive passenger is similar to the result in *State Farm Mutual Automobile Insurance Co. v. Wagamon*, 541 A.2d 557 (Del. 1988), where an auto liability policy denied coverage to an insured for a claim brought by a family member based on a "household exclusion." *Wagamon* held that the financial responsibility law was meant to protect persons injured in automobile accidents "regardless of their affiliation with the insured." *Id*. at 560. Here, Fry's affiliation to the driver is irrelevant to her being injured by a hit-and-run driver and public policy mandates that Safe Auto afford her coverage.

¶ 26    In *State Farm Mutual Automobile Insurance Co. v. Washington*, 641 A.2d 449, 452 (Del. 1994), the court held that public policy required UIM coverage of an injured son who was excluded from liability coverage under his father's policy "whether or not he is a passenger in an automobile, a pedestrian or a driver" because denying the son UIM did not further the same purpose as excluding him from liability coverage. The same rationale applies here: the reasonable belief exclusion applicable to Reed does not further the purpose of the public policy of protecting Fry, his permissive passenger, when she is injured by a hit-and-run motorist.

¶ 27    Were we to agree with Safe Auto on the issue presented here, we would be undoubtedly ignoring the direct adverse impact such a decision would have on our established public policy and mandatory UM coverage.  When consideration is given to the prevalence of driving on a suspended or revoked license and the potential harm to innocent passengers injured by an at-fault uninsured motorist, the insurer's position cannot be accepted. We also consider the relationship of the risk considered by the insurer and the corresponding premium it demands in return for the insurance contract. The premium charged for automobile liability coverage is based on the owner/driver's driving record and the record of others that may be permitted to drive (use) the vehicle, typically family members. Assuming there is an increase in premium because of the required statutory UM and UIM coverage, this increase would be based on the data available from the market regarding (broadly and generally) population, accident rates and other demographic information the insurance industry deems relevant in evaluating risk. See *id.*  ("An auto insurer assumes two very different risks in terms of liability and uninsured/underinsured motorist coverages. In the first instance, the experience, driving record and negligence of the insured driver defines the risk to the insurer. In the latter, the risk is defined by the negligence of

the public at large. Uninsured/underinsured motorist coverage protects those injured by negligent, financially irresponsible drivers."). The owner/driver component of risk in the liability context is a separate and distinct risk of loss in a UM or UIM context.

¶ 28    In Illinois, license suspensions are authorized for driving related misconduct and for nondriving related reasons, including unpaid parking tickets, failure to pay child support and tollway violations.[1] 625 ILCS 5/6-306.5, 306.7, 7-702 (West 2010).  Currently, in Illinois, approximately 1.9 million licenses are suspended or revoked (about 21% of all licenses), of which 31%  (577,192) are for nondriving related reasons (about 6% of all licenses), which is similar to the experience of other states.[2]  California, for example, 17%, or 4 million drivers, drive while suspended.[3] Recently, the American Association of Motor Vehicle Administrators (AAMVA) reported that nationally, at any given time, approximately 7% of drivers (approximately 15 million) are driving while suspended.[4] The report focused on the number of drivers suspended for reasons other than poor driving or "suspensions for social non-

---

[1]See Illinois Secretary of State, *Losing Your Driving Privileges*, available at http://www.cyberdriveillinois.com/departments/drivers/losepriv.html (last visited Aug. 11, 2015).

[2]Information provided by the Illinois Secretary of State as of August 11, 2015. In a report prepared by Rutgers University, Illinois reported over 222,000 suspended licenses (2.6% of licensed drivers) in 2003. New Jersey reported that approximately 5% of its 6 million drivers were suspended and less than 6% were suspended for purely driving related reasons. Jon A. Carnegie,  *Driver's License Suspensions, Impacts and Fairness Study* (2007). http://vtc.rutgers.edu/wp-content/uploads/2014/04/MVC-DL-Susp-Final-Report-Vol2.pdf.

[3]See AFSCME Information Highway, *Not Just a Ferguson Problem - How Traffic Courts Drive Inequality in California*, at 6, 20 (2015), http://www.lccr.com/wp-content/uploads/Not-Just-a-Ferguson-Problem-How-Traffic-Courts-Drive-Inequality-in-California-4.20.15.pdf.

[4]See American Association of Motor Vehicle Administrators, *Best Practices Guide to Reducing Suspended Drivers*, at 2 (2013), http://www.google.com/url?url=http://www.aamva.org/WorkArea/DownloadAsset.aspx%3Fid%3D3723&rct=j&frm=1&q=&esrc=s&sa=U&ved=0CEEQFjAGahUKEwjc4ZqXwJXHAhVBlY AKHbDGAwo&usg=AFQjCNF4pyQAoSCQgIIaKmFR5VzvhnBqsA(AAMVA).

conformance reasons": bounced checks, fuel theft, truancy, vandalism, failure to pay taxes, minor in possession of alcohol, false public alarm, illegal solid waste burning, vandalism, failure to pay alimony, selling alcohol to a minor, truancy, unlawful possession of firearms, prostitution, and many more. AAMVA, *supra* at 22. According to the AAMVA, in 2002 drivers suspended for social nonconformance reasons represented 29% of all suspended drivers. *Id*. at 2. By 2006, this group represented 39% of all suspended drivers, or about 6 million drivers. *Id*. The AAMVA concluded that research verified that drivers suspended for social non-conformance reasons pose a comparatively lower safety risk compared to those who are suspended for driving related reasons. *Id*. at 23. Notably, the AAMVA stated that research indicated that "75 percent of all suspended drivers continue to drive. The addition of suspensions for social non-conformance reasons has however, dramatically increased the number of suspended drivers on our roads resulting in a tremendous burden on law enforcement, departments of motor vehicles, the courts, and local communities." *Id*. at 4.

¶ 29    The frequency of "driving dirty" and its relationship to Illinois' public policy to protect innocent passengers injured by at-fault uninsured or hit-and-run drivers indicates there is a strong likelihood that hundreds of thousands of unlicensed or suspended drivers are on Illinois roads, many of whom are suspended for reasons other than bad driving. Considering the national figures, it is reasonable to conclude that, in Illinois, a staggering number of permissive passengers are riding in vehicles where the driver does not have a reasonable belief he is permitted to drive.

¶ 30    "Driving dirty," while not condoned, is a reality. Yet this reality is not something a passenger would likely consider when getting into a car. As stated in *Monroe v. United States Fidelity & Guaranty Co.*, 237 Ill. App. 3d 261, 268 (1992),

> "[t]here are far too many instances we can call to mind in which a passenger may not have his own policy to look to for recovery. Many people in our State, minors, elderly persons, and people who rely on mass transportation, do not own automobiles, and, thus, do not have their own insurance policy. When a passenger enters an automobile, he should realistically believe he is covered by the owner's policy."

This observation is as accurate today as it was twenty-five years ago. These permissive passengers are at risk of injury and economic loss due to the fault of uninsured or hit-and-run operators and there is a strong likelihood that the operator of the vehicle they occupy, if suspended, was suspended for reasons unrelated to bad driving. It simply does not follow that these and other innocent passengers should be at risk and denied UM coverage "to at least the same extent compensation is available for injury by a motorist who is insured in compliance with the Financial Responsibility Law" (*Putnam v. New Amsterdam Casualty Co.*, 48 Ill. 2d 71, 89 (1970)) because of the application of a driver reasonable belief exclusion.

¶ 31    In conclusion, we hold the driver reasonable belief exclusion as applied in this case clearly violates public policy and does not further the public interest because this exclusion allows insurers to indirectly deny coverage to a category of otherwise protected insureds, the permissive passenger, for which premiums were charged and received, based on a broad exclusion applicable to only one category of insured (drivers) under the policy. "We cannot ignore that a premium was paid for uninsured motorist protection. If that protection is not there,

the policyholder has been denied substantial economic value in return for the premiums which have been paid." *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 278 (1992). The *Hoglund* court pointed out that exculpatory language cannot be read in isolation but must be read in conjunction with the policy holder's reasonable expectations along with the public policy behind the statute and the coverage intended by the insurance policy itself. *Id.* at 279. This exclusion is void and unenforceable as applied to permissive passengers under section 7-317(f)(4) of the Vehicle Code (625 ILCS 5/7-317(f)(4) (West 2010) ("The policy, the written application therefor, if any, and any rider or endorsement which shall not conflict with the provisions of this Act shall constitute the entire contract between the parties.")).

¶ 32     Fry was a permissive user entitled to protection from economic loss related to her personal injury due to an at fault hit-and-run motorist. To allow Safe Auto, or any other insurer, to directly or indirectly avoid the mandate of the General Assembly, and the decisions of our courts, by denying UM coverage to permissive passengers by extension of a driver reasonable belief exclusion is unenforceable as against public policy.

¶ 33                                   CONCLUSION

¶ 34     For the reasons stated herein, we find that the trial court erred in granting summary judgment in favor of Safe Auto and reverse the ruling of the circuit court and remand for proceedings consistent with this order.

¶ 35     Reversed and remanded.

¶ 36     JUSTICE NEVILLE, dissenting.

¶ 37     The majority takes the position that denying Fry, a permissive passenger, coverage through the reasonable-belief exclusion of Safe Auto's insurance policy allows Safe Auto, and

other insurance companies, to avoid the mandate of the General Assembly to insure not only the persons named in the policy, but also any other person using or responsible for the use of the subject vehicle with the express or implied permission of the insured. The majority also holds that allowing the reasonable-belief exclusion to deny uninsured motorist coverage to a permissive passenger is against public policy. The majority's decision is contrary to Illinois Supreme Court case law. See *Founders,* 237 Ill. 2d at 445; *Schultz,* 237 Ill. 2d at 404. Therefore, I respectfully dissent.

¶ 38    The majority overlooks the fact that Illinois public policy is clear that in order to drive a vehicle in Illinois, the driver must have a valid license. 625 ILCS 5/6-101(a) (West 2010). Specifically, section 6-101(a) of the Illinois Vehicle Code provides:

> "No person *** shall drive any motor vehicle upon a highway in this State unless such a person has a valid license or permit, or a restricted driving permit, issued under the provisions of this Act." 625 ILCS 5/6-101(a) (West 2010).

¶ 39    The Illinois Supreme Court interpreted the aforementioned provision in the Vehicle Code and the reasonable-belief exclusion in an insurance policy and held that no driver could have a reasonable belief that he was entitled to drive in this state without a valid license. *Founders,* 237 Ill. 2d at 438. The *Founders* court also held that the reasonable belief exclusion does not violate the public policy of Illinois and that insurance companies may limit their risks:

> "The reasonable-belief exclusion at issue here, like the food-delivery exclusion at issue in *Progressive*, applies equally to the named insured and anyone using the vehicle with the insured's permission. Pursuant to our analysis in *Progressive*, we hold that the *exclusion does not violate Illinois public policy* as

set forth in section 7–317(b)(2) of the Vehicle Code. Founders and Safeway *may limit their risk by excluding insureds and permissive users alike* who lack the most basic requirement for driving in this state: a valid license. We recognize that, depending upon the circumstances of a particular case, the reasonable-belief exclusion, like any exclusion, may result in no insurance coverage from which injured third parties may be compensated. Such coverage gaps, however, implicate policy concerns that are properly considered by the legislature, not this court. " (Emphases added.) *Founders,* 237 Ill. 2d at 445.

¶ 40 The Illinois Supreme Court makes it clear that when a driver operates a vehicle without a valid license, the driver has no reasonable belief that he is entitled to drive under the reasonable-belief exclusion in a motor vehicle insurance policy. *Founders*, 237 Ill. 2d at 438. The Illinois Supreme Court also makes it clear that the word "user" in a motor vehicle policy includes "permissive passengers as well as permissive drivers." *Schultz*, 237 Ill. 2d at 402-03. Therefore, according to *Founders* and *Schultz*, Fry, a passenger in a vehicle driven by an insured driver without a valid driver's license, is barred from recovering uninsured motorist coverage by the reasonable-belief exclusion in the driver's motor vehicle insurance policy. *Founders*, 237 Ill. 2d at 445; *Schultz*, 237 Ill. 2d at 402-04. Accordingly, in my opinion, the trial court did not err when it granted Safe Auto's motion for summary judgment.

¶ 41 In conclusion, I agree with the *Founders* court that we must wait until the legislature decides that it will remove the coverage gap by crafting legislation which provides that permissive passengers should receive uninsured motorist coverage and should not be treated like unlicensed drivers or unlicensed permissive drivers under the reasonable-belief exclusion.

*Founders*, 237 Ill. 2d at 445. But, this court is bound by decisions of the Illinois Supreme Court. *People v. Artis*, 232 Ill. 2d 156, 164 (2009). Accordingly, I follow *Founders* and *Schultz* and respectfully dissent.